[Crim. No. 24961. July 16, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES JOSEPH LEE, Defendant and Appellant.

COUNSEL

Jay Ruskin, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gary R. Hahn, Robert R. Anderson and Donald E. De Nicola, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LUCAS, C. J.—In this case, involving charges of attempted murder and robbery, the jury received contradictory, and partially inaccurate, instructions regarding the element of specific intent to kill required to sustain a verdict of attempted murder. We granted review to settle some uncertainties

regarding the appropriate review standard to be used in determining whether such an error is prejudicial. As will appear, we conclude that the appropriate standard is the "harmless beyond a reasonable doubt" test for federal constitutional errors. (See *Chapman* v. *California* (1967) 386 U.S. 18, 21 [17 L.Ed.2d 705, 709, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Applying that test here, we also conclude beyond a reasonable doubt the jury would not have reached a more favorable verdict had it been properly instructed.

## I.  The Facts

The uncontradicted facts are as follows: Defendant approached Janice Banks, who was waiting in her car in a parking lot. He displayed a gun and ordered her to start the car and exit from it. Banks's purse remained on the car seat. Defendant drove the car away, but was eventually pursued by a patrol car driven by officers alerted by victim Banks. Officer Harris spotted the stolen car and activated his siren and red lights. In response, defendant accelerated to a high speed, driving through a red light. Nonetheless, the officer caught up with defendant, who eventually slowed down and jumped from the vehicle, running into a nearby apartment complex.

Officers Crenshaw and Yaden, patrolling the area, observed defendant carrying a woman's purse and being pursued by Officer Harris. The two officers stopped their own patrol car, ran after defendant and ordered him to stop. Defendant stopped 15 to 20 feet from the officers, turned toward them and fired his weapon in their direction. The shot missed and his gun jammed before any other shots could be discharged. Defendant was apprehended and charged with attempted murder and robbery.

Among other instructions, the trial court correctly instructed the jury that in each of the crimes charged "there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator and unless such specific intent exists the crime to which it relates is not committed. . . . *The crime of attempted murder requires the specific intent to unlawfully kill a human being.* . . ." (CALJIC No. 3.31, italics added.) The jury was further instructed that "The intent with which an act is done is shown . . . by the circumstances attending the act, the manner in which it is done, the means used, and the soundness of mind and discretion of the person committing the act." (CALJIC No. 3.34.)

In addition, the jury was told that the crime of attempted murder requires that defendant possess the mental state of "malice aforethought" (CALJIC No. 3.31.5), and that "The crime of attempt [*sic*] murder is the unlawful attempted killing of a human being with malice aforethought" (CALJIC No. 8.10, as modified by the court). The problem at issue here

arose when the trial court gave additional instructions defining "malice" in such a manner as to permit dispensing with an actual specific intent to kill.

Thus, the court instructed the jury that "*Malice may be implied* when the attempt [*sic*] killing results from an intentional act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life. When it is shown that an attempt [*sic*] killing resulted from the intentional doing of an act with implied malice, no other mental state need be shown to establish the mental state of malice aforethought. . . ." (CALJIC No. 8.11, as modified, italics added.) Finally, the jury was told that "Attempt [*sic*] murder is the unlawful attempt [*sic*] killing of a human being as the direct causal result of an intentional act involving a high degree of probability that it will result in death. . . . When the attempt [*sic*] killing is the direct result of such an intentional act, *it is not necessary to establish that the defendant intended that his act would result in the death of a human being.*" (CALJIC No. 8.31, as modified, italics added.)

The jury convicted defendant of attempted murder and robbery, and the Court of Appeal affirmed the conviction. As will appear, we conclude that the Court of Appeal's decision should be affirmed.

## II. DISCUSSION

### A. *Instructional Error*

■ It is now well established that a specific intent to kill is a requisite element of attempted murder, and that mere implied malice is an insufficient basis on which to sustain such a charge. Accordingly, implied malice instructions should never be given in relation to an attempted murder charge. (See *People* v. *Ratliff* (1986) 41 Cal.3d 675, 695-696 [224 Cal.Rptr. 705, 715 P.2d 665]; *People* v. *Guerra* (1985) 40 Cal.3d 377, 386-387 [220 Cal.Rptr. 374, 708 P.2d 1252]; *People* v. *Ramos* (1982) 30 Cal.3d 553, 583-584 [180 Cal.Rptr. 266, 639 P.2d 908]; *People* v. *Johnson* (1981) 30 Cal.3d 444, 447-449 [179 Cal.Rptr. 209, 637 P.2d 676] [assault with intent to murder]; *People* v. *Collie* (1981) 30 Cal.3d 43, 61-62 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776]; *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 762-765 [175 Cal.Rptr. 738, 631 P.2d 446] [assault with intent to murder].)

As stated in a recent appellate decision applying the foregoing rule, "as to the crime of attempt to commit murder, where a specific intent to kill is absolutely required, reliance upon any definition of murder based upon implied malice is logically impossible, for implied malice cannot coexist with express malice. With this fundamental concept to be reckoned with,

instructions on the crime of attempt to commit murder, necessarily, when they define the underlying crime of murder, must be limited only to that kind of murder where a *specific* intent to kill or, in other words, *express* malice, is one of the elements." (*People* v. *Santascoy* (1984) 153 Cal.App.3d 909, 914 [200 Cal.Rptr. 709]; see also *People* v. *Bounds* (1985) 171 Cal.App.3d 802, 806-808 [217 Cal.Rptr. 718]; *People* v. *Acero* (1984) 161 Cal.App.3d 217, 229 [208 Cal.Rptr. 565]; *People* v. *Bottger* (1983) 142 Cal.App.3d 974, 980 [191 Cal.Rptr. 408] [solicitation of murder].)

■ In the present case, as the People concede, the Court of Appeal correctly held that the trial court erred in giving conflicting instructions on the issue of specific intent to kill as it related to an attempted murder charge. One instruction (CALJIC No. 3.31) properly explained that "attempted murder requires the specific intent to unlawfully kill," while another instruction (CALJIC No. 8.31, as modified by the court) gave the opposite impression and incorrectly stated that if the attempted killing resulted from an intentional act done with implied malice, "it is not necessary to establish that the defendant intended that his act would result in . . . death. . . ."

B. *Standard of Prejudicial Error*

Having concluded that error was committed in giving these conflicting instructions, we now turn to the principal issue in this case, namely, the proper standard for ascertaining whether or not the error was prejudicial. The cases have reached a variety of conflicting conclusions on this subject.

1. *Applicable cases.* We originally applied the *Watson* test (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]) in cases involving similar errors. (See *People* v. *Murtishaw, supra,* 29 Cal.3d at p. 765; *People* v. *Johnson, supra,* 30 Cal.3d at pp. 448-449; *People* v. *Ramos, supra,* 30 Cal.3d at p. 584.) Two subsequent cases reversed judgments without discussing the applicable standard, but suggested that reversal may be required whenever an appellate court is unable to determine whether or not the jury properly found a specific intent to kill, rather than mere implied malice. (See *People* v. *Guerra, supra,* 40 Cal.3d 377, 386; *People* v. *Collie, supra,* 30 Cal.3d 43, 62.)

Finally, in *People* v. *Ratliff, supra,* 41 Cal.3d at pages 695-696, a case in which *no* specific-intent-to-kill instruction was given, we recognized that some uncertainty had arisen regarding the appropriate test, but concluded that, regardless of which standard was used, the error was reversible under the circumstances presented in that case.

The uncertainty we discerned in *Ratliff* derived in part from appellate decisions which had considered the possibility that the giving of conflicting or inadequate instructions regarding intent to kill, in the context of an attempted murder charge, may constitute *federal* constitutional error requiring an elevated standard of evaluating the harmlessness of the error. (See *People* v. *Bounds, supra,* 171 Cal.App.3d at pp. 807-810; *People* v. *Acero, supra,* 161 Cal.App.3d at p. 229.) The Court of Appeal in the present case (the same panel which decided *Bounds*) took the same approach, concluding, however, that the error was harmless under the federal *Chapman* standard. (See *Chapman* v. *California, supra,* 386 U.S. 18, 21 [17 L.Ed.2d 705, 709].)

In *Acero, supra,* 161 Cal.App.3d 217, defendant and a codefendant were charged with attempted murder and other offenses; defendant was convicted on an aiding and abetting theory, but the jury was never told that an aider and abettor must also share the killer's specific intent to kill. (See *People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318].) In *Acero,* as here, the jury was told that attempted murder required malice aforethought, and that malice could be either express *or implied.* The *Acero* court acknowledged the error in these instructions and observed that in *Murtishaw, supra,* 29 Cal.3d 733, we had employed a *Watson* test to determine the prejudicial effect of such errors. Nonetheless, the *Acero* court noted that in a subsequent decision we indicated that a stricter standard might be appropriate where the court's instructions entirely removed the issue of criminal intent from the jury's consideration. (161 Cal.App.3d at pp. 227-229; see *People* v. *Garcia* (1984) 36 Cal.3d 539, 550-558 [205 Cal.Rptr. 265, 684 P.2d 826]; see also *People* v. *Croy* (1985) 41 Cal.3d 1, 12-15 [221 Cal.Rptr. 592, 710 P.2d 392].) *Acero* concluded that "Because *Murtishaw* error involved misinstruction on a necessary element of the criminal offense of attempted murder, the mens rea with which the *actus reus* was performed, it . . . triggers reversal in all cases on both state and federal constitutional grounds. . . . [¶] Even assuming the *Watson* or *Chapman* standard is the appropriate test of prejudice, reversal of Acero's conviction is nonetheless required." (*Id.* at p. 229.)

A dissenting justice in *Acero* suggested that the instructional error was harmless "since the jury was properly instructed on express malice and there was no reasonable basis for concluding the jury found otherwise than that Acero had the specific intent to kill. . . ." (P. 234.)

In *People* v. *Bounds, supra,* 171 Cal.App.3d 802, the jury was properly instructed that a specific intent to kill was required for attempted murder, but was also instructed on implied malice. A majority of the court concluded that the instructional error was subject to the *Chapman* test, *supra,* 386

U.S. 18, 21 [17 L.Ed.2d 705, 709], but further concluded that the error was harmless under that test. As in *Acero, supra,* 161 Cal.App.3d 217, the *Bounds* majority believed that our *Garcia, supra,* 36 Cal.3d 539, ruling may require a stricter standard than *Watson, supra,* 46 Cal.2d 818, even in a case where the jury merely had been given conflicting instructions (rather than no instructions at all) on the subject of intent to kill. As *Bounds* stated, "we conclude the contradictory instructions given in the case at bar violated the defendant's due process rights under the Fourteenth Amendment. [¶] Since the error . . . is of federal constitutional dimensions, the standard of error is governed by federal law. [Citations.]" (171 Cal.App.3d at p. 809.) The *Bounds* majority suggested that, under *Garcia,* the error might even be deemed reversible per se, but in the absence of any holding to that effect by a higher court, *Bounds* was unwilling to adopt that standard.

The dissent in *Bounds* believed that the appropriate review standard for evaluating the instructional error is the *Watson* test, *supra,* 46 Cal.2d 818. According to the dissent, "I am unable to equate the error in the instant case, in which the jury was properly and fully instructed on the necessity for a finding of specific intent to kill in an attempted murder conviction, with the error in *Garcia* and *Acero* involving a total failure to instruct on the element of intent to kill, or the giving of any instruction which completely removes the issue of intent from the jury. I find no similarity whatever between the instant case and those cases relied upon by the majority." (*Id.* at p. 814.)

The People urge we adopt the view of the *Bounds* dissent that a mere *conflict* in the instructions on the issue of intent to kill is far less serious or inherently prejudicial than a complete failure to instruct on that issue, and that the giving of conflicting instructions accordingly should not amount to *federal* constitutional error which would invoke either the *Chapman, supra,* 386 U.S. 18, or reversal-per-se tests. As will appear, we conclude that conflicting instructions such as were given here were indeed constitutionally deficient, but that the deficiency was not so grave as to invoke a reversal-per-se standard.

2. *Federal constitutional error.* The United States Supreme Court has held that instructions *completely removing* the issue of intent from the jury's consideration may constitute a denial of federal due process principles, which require the state to shoulder the burden of proving beyond a reasonable doubt every fact necessary to the crime charged. (*Sandstrom* v. *Montana* (1979) 442 U.S. 510, 520 [61 L.Ed.2d 39, 48, 99 S.Ct. 2450] [conclusive presumption of intent]; see *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969] [same]; *People* v. *Garcia, supra,* 36 Cal.3d at pp. 550-558 [failure to instruct on intent to kill in felony-murder special

circumstance case].) ▇ We believe that conflicting instructions, which appear *to require a specific intent to kill but which eliminate that require-* ment where implied malice is found, are closely akin to instructions which completely remove the intent issue from the jury's consideration: If the implied malice instructions are followed, the issue of intent may indeed be removed from the case.

Dictum in certain high court cases supports the view that conflicting or contradictory instructions on the subject of intent may constitute federal constitutional error. Thus, in *Sandstrom,* the court observed that the defective presumed-intent instruction at issue there was ambiguous and could have been construed as merely rebuttable rather than conclusive. Nonetheless, the court ruled the instruction constitutionally defective because a reasonable juror could have believed that the issue of intent was *conclusively* established by reason of the instruction. (See 442 U.S. at pp. 519, 526 [61 L.Ed.2d at p. 52].) In similar fashion, the conflicting instructions given here could have led some jurors to believe that an act done with implied malice was sufficient to satisfy the specific-intent-to-kill requirement for attempted murder.

In addition, language in *Francis* v. *Franklin* (1985) 471 U.S. 307, 322 [85 L.Ed.2d 344, 358, 105 S.Ct. 1965], states that similar contradictory or irreconcilable instructions on the issue of presumed intent in a criminal case are constitutionally defective, since "Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." (See also *Cabana* v. *Bullock* (1986) 474 U.S. 376, 384, fn. 2 [88 L.Ed.2d 704, 715, 106 S.Ct. 689])

We conclude that the conflicting instructions in the present case likewise are "constitutionally infirm." Accordingly, we must determine whether the harmlessness of the error is to be determined by application of the *Chapman* test, *supra,* 386 U.S. 18, 21 [17 L.Ed.2d 705, 709], or whether the error must be deemed reversible per se.

3. *Chapman or automatic reversal.* ▇▇▇▇ We believe that the *Chapman* test should apply here, for the error is not so serious as to invoke an automatic-reversal rule. As the high court has recently explained, a reversal-per-se standard is reserved for *fundamental* trial errors, such as the introduction of a coerced confession or the complete denial of counsel, which either "aborted the basic trial process [citation], or denied it altogether [citation]." (*Rose* v. *Clark* (1986) 478 U.S. 570, __, fn. 6 [92

L.Ed.2d 460, 470, 106 S.Ct. 3101, 3106].[1]) *Clark* explained that "harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury. . . . [T]he error in such a case is that the wrong entity judged the defendant guilty." (*Id.* at pp.__, __ [92 L.Ed.2d at p. 471, 106 S.Ct. at p. 3106].) Nonetheless, aside from errors affecting fundamental rights, "there is a strong presumption that any other errors that might have occurred are subject to harmless error analysis." (*Id.* at p. __ [92 L.Ed.2d at p. 471, 106 S.Ct. at p. 3107].)

In *Clark,* the court held that an erroneous malice instruction, which purported to create a presumption of malice for homicides in the absence of contrary proof, was not so serious as to require automatic reversal in every case. The court observed that the error did not affect the composition of the record nor remove the issue of intent from the jury's consideration. (*Id.* at p. __, fns. 7, 8 [92 L.Ed.2d at pp. 471-472, 106 S.Ct. at p. 3107].)

As stated in *Clark*: "Nor is *Sandstrom* error equivalent to a directed verdict for the State. When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. [Citation.] In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not *intend* to cause injury. [Citation.] In that event the erroneous instruction is simply superfluous. . . ." *Id.,* p. __, fn. omitted [92 L.Ed.2d at p. 472, 106 S.Ct. at pp. 3107-3108].)

*Clark* is controlling here. That case involved presumed malice instructions; the present case involves comparable instructions which, in essence, presumed intent from acts of implied malice. In the present case, as in

---

[1] Although a defendant has a constitutional right to have the jury determine every material issue presented by the evidence, and an improper refusal of instructions on a defense theory supported by the evidence has been deemed reversible per se (*People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33]; but see *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720-721 [112 Cal.Rptr. 1, 518 P.2d 913]), in the present case the jury was instructed, albeit contradictorily, on the subject of specific intent to kill. Accordingly, no *Modesto* error was committed here.

Similarly, defendant relies on cases holding that a conviction should be reversed if the jury instructions regarding one of several prosecution theories were legally or factually incorrect, and it is impossible to determine which theory the jury relied on in rendering its verdict. (E.g., *People* v. *Green* (1980) 27 Cal.3d 1, 69-70 [164 Cal.Rptr. 1, 609 P.2d 468].) But, assuming that it is clear beyond a reasonable doubt that a properly instructed jury would have found a specific intent to kill, any error in instructing the jury on the alternative "theory" of implied malice cannot be deemed a "miscarriage of justice" under our state constitutional harmless error provision (art. VI, § 13), and a reversal-per-se rule would be inappropriate. (See *People* v. *Cantrell* (1973) 8 Cal.3d 672, 686 [105 Cal.Rptr. 792, 504 P.2d 1256] [alternate-theory rule subject to harmless error analysis].)

*Clark,* the conflicting instructions did not affect the composition of the record nor preclude the admission of relevant evidence bearing on the intent issue. The jury likewise was required to focus upon the "predicate facts" needed to support a finding of implied malice, i.e., an intentional act involving a high probability of fatal consequences, done for a base, antisocial purpose with a wanton disregard for human life. Moreover, here the jury was faced only with conflicting instructions on the intent issue, rather than wholly erroneous or incomplete instructions on that issue.

Defendant had relied on certain language in prior cases (e.g., *Cabana* v. *Bullock, supra,* 474 U.S. 376, 384 [88 L.Ed.2d 704, 715]; *People* v. *Garcia, supra,* 36 Cal.3d 539, 550-558) suggesting that errors in instructing regarding the element of an offense would be reversible per se. The United States Supreme Court has now indicated, however, that "To the extent that cases prior to *Rose* [v. *Clark, supra*] may indicate that a conviction can never stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard, see *e.g., Cabana* v. *Bullock,* 474 U.S. 376, 384 (1986), after *Rose,* they are no longer good authority." (*Pope* v. *Illinois* (1987) 481 U.S. __, __, fn. 7 [95 L.Ed.2d 439, 447, 107 S.Ct. 1918])

In *Pope,* the high court held that instructional error in informing the jury to employ a statewide community standard in deciding the element of redeeming value in an obscenity case would be deemed harmless "if it can be said beyond a reasonable doubt that the jury's verdict in this case was not affected by the erroneous instruction." (*Id.* at p. __ [95 L.Ed.2d at p. 446].) The court stressed that the jury was not wholly precluded from considering the question of value; it was merely told to apply an incorrect standard in determining that element of the offense. (*Id.* at p. __ [95 L.Ed.2d at p. 446].)

Similarly, in the present case, the jury was originally told that a specific intent to kill was required, and then erroneously instructed that proof of such intent was unnecessary if implied malice was demonstrated.

For all the foregoing reasons, we conclude that a reversal-per-se standard is inappropriate in an attempted murder case where conflicting specific intent and implied malice instructions have been given, and that the *Chapman* test, *supra,* 386 U.S. 18, 21 [17 L.Ed.2d 705, 709], should be employed in such cases.

## C. *The Error was Harmless*

█ Was the instructional error in this case harmless? We believe so. The parties' closing jury arguments[2] focused upon the necessity of finding a specific intent to kill, consistent with CALJIC No. 3.31 which was read to the jury. Moreover, the evidence of defendant's intent to kill a pursuing officer was, as the Court of Appeal herein concluded, quite strong. The pistol defendant carried was an automatic. He only fired the pistol once but the physical evidence and the testimony of Officer Crenshaw establish beyond doubt that immediately after firing the first shot and missing, defendant attempted to fire a second shot at the officers at a distance of only 15 to 20 feet. Officer Crenshaw testified the officers were close together with Crenshaw in the lead and Officer Yaden approximately two feet behind and to the right. Fortunately the gun jammed, whereupon defendant threw it to the ground where it was subsequently found with a spent casing jammed in the ejection port and a live round in the magazine.

The court instructed not once but either three or four times that to convict defendant of attempted murder the prosecution was required to prove defendant shot at the officers with the specific intent to kill and the argument of counsel for both sides was specifically directed at the question of the specific intent to kill. Furthermore, although the implied malice instructions were facially in conflict with the specific intent instructions, we are convinced that from the way in which the instructions were given, combined with the closing arguments of counsel, the jury most likely understood it was required to find *both* specific intent to kill *and* malice, that it did so find, and that there is no reasonable possibility that absent the error the verdict would have been different.

The prosecutor never denied or disputed that a specific intent to kill was at issue here, and he discussed malice and intent to kill as two distinct elements of proof *both* of which were required to convict for attempted murder. He observed that murder is a killing with malice aforethought, that an attempt requires "Specific intent to commit the crime, and [a] direct but ineffectual act done toward its commission." The prosecutor did note that malice can be implied "when there's an intentional act involving a high degree of probability that it will result in death, which act is done for a base antisocial purpose and with a wanton disregard for human life." But the prosecutor stressed that, under the evidence, defendant's act in firing his gun at the officers from 15 to 20 feet away was not merely intended "to scare them away," but was intended instead to "shoot" them.

---

[2] We have attached as an appendix to this opinion pertinent portions of the instructions and closing arguments.

Thereafter, defense counsel repeatedly and without objection from the prosecutor, stressed that attempted murder requires proof of an intent to kill, and argued that in the present case there was no evidence that defendant fired his gun with an intent to kill the pursuing officers. According to counsel, Officer Crenshaw merely testified that defendant fired at the two officers, and in defense counsel's view, "I don't believe you can find beyond a reasonable doubt that he intended to kill either one of them." Counsel carefully explained that if defendant fired without the requisite intent to kill, "That's assault with a deadly weapon." But with respect to attempted murder, "You have to prove intent to kill, not just that a person was shot at. [¶] . . . [E]ven if you believe Officer Crenshaw's testimony that this weapon was leveled at him, there is no proof whatsoever that the intent was to kill. . . . [¶] In order to convict Mr. Lee of this charge, you have to prove that what he intended to do was murder. That's what his intent was, to kill." Counsel continued by observing that, since the People did not charge assault with a deadly weapon, the jury must return a "not guilty" verdict on attempted murder "because as to that count, the People have not proved intent to kill at all."

Given (1) the number of times the court told the jury a conviction of attempted murder requires proof of the specific intent to kill, (2) the court's consistent reference to malice as a mental state and intent to kill as the specific intent required, and (3) the argument of counsel directed specifically at the requirement of intent to kill and suggesting that both specific intent to kill and malice had to be proven by the prosecution, we conclude beyond a reasonable doubt that the jury believed proof of both malice and intent to kill was required.

The Court of Appeal herein examined the record and concluded that the instructional error was harmless beyond a reasonable doubt (i.e., using the *Chapman* test, *supra,* 386 U.S. 18, 21 [17 L.Ed.2d 705, 709]). Because we concur in its conclusion, we set forth and adopt the following portions of the Court of Appeal opinion pertinent to this essentially factual issue:

"This is not a case presenting a significant conflict in the evidence— where the prosecution puts forth one set of witnesses conveying one impression of what happened and the defense counters with another set of witnesses telling a very different story. So we do not have to decide whether a reasonable juror could give credence to the defendant's version of what he did and said as it bears on the issue of intent in preference to the prosecution's version. Instead, what we have here is a single story as to the objective facts, but a dispute over what this proves about what cannot be seen— defendant's internal thoughts.

"In this case, several acts and circumstances compel an inference [defendant] entertained a specific intent to kill. To begin with, [defendant] stopped, turned, and aimed a loaded firearm at people he knew to be armed policemen. This was not a situation where [defendant] could hope to frighten some unarmed people who were threatening him by merely brandishing a gun. Instead by pointing the automatic pistol at the pursuing officers he intentionally placed himself in a 'kill or be killed' situation. Then he went a step further and started firing at the officers — not over their heads or at their feet but at *them*. He got off one round, which missed, before the gun jammed. Nor was this a situation where [defendant] might have fired in the general direction of distant pursuers in the hope they would take cover so he could make good his escape. Indeed when he fired, [defendant] was at near 'point blank' range—15 to 20 feet from the officers. At this juncture it was even too late to wound the officers. They did not have to approach any closer to [defendant] to bring him within easy range of their own firearms. In fact, they were so close even a wounded officer would have been a threat to kill [defendant]. To open fire on armed policemen in these circumstances requires a specific intent to kill since the assailant knows he has chosen a 'kill or be killed' confrontation.

"On the evidence before the jury in this case we do not have a reasonable doubt about whether [defendant] had a specific intent to kill the officers when he opened fire on them. He clearly did. We are equally certain no reasonable juror, properly instructed on the issue of intent, could have entertained a reasonable doubt on this question. Consequently, we hold the instructional error is harmless beyond a reasonable doubt and is not grounds for reversal of [defendant's] conviction."

Defendant suggests that a finding of harmless error under *Chapman, supra,* 386 U. S. 18, 21 [17 L.Ed.2d 705, 709], cannot be reconciled with the contrary conclusion drawn in *People* v. *Ratliff, supra,* 41 Cal.3d at pages 695-697, and *People* v. *Johnson, supra,* 30 Cal.3d at pages 447-449. We disagree. First, in neither case was the jury expressly instructed that a specific intent to kill was required for attempted murder. Second, *Ratliff* and *Johnson* each involved rather casual, unprovoked shootings of presumably unarmed citizen victims; in neither case did the defendant have any apparent motive to kill, rather than merely injure, his victims. In the present case, on the other hand, defendant was being pursued by armed police officers in an apparent "kill or be killed" situation. His very act of firing at the officers from 15 to 20 feet away could only be seen as disclosing an intent to kill them.

The judgment of the Court of Appeal is affirmed.

Mosk, J., Broussard, J., Panelli, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.

---

## APPENDIX

1. *Closing Argument by the District Attorney*:

"Now, the next issue that I would like to cover is that of attempted murder. Now, what is murder? The law says that *murder* is the killing of a human being *with malice aforethought.*

"And first of all, I'd like to go into what an attempt is. An attempt to commit a crime consists of two elements: *Specific intent to commit the crime,* and direct but ineffectual act done towards its commission.

"It says further on, that acts of a person who intend to commit a crime will constitute *an attempt* when they themselves clearly indicate a certain *unambiguous intent to commit that specific crime* and in themselves are in the immediate step, in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstances not intended in the original design.

"In other words, when Officer Crenshaw testified that he comes in the middle of all this, he sees officers pursuing the defendant and he goes in pursuit of the defendant, the defendant turns around, lifts up his arm, points at him between 15 to 20 feet away from this police officer. He sees that muzzle flash, which is referring to the explosion, and he hears the shot, *that constitutes attempted murder. That is the act that the defendant intended to do.*

"*What else did he intend to do? He intended to scare them away? There's just no reasonable explanation for that.* And as such, that is the attempted murder.

"Now, when I told you that murder is killing of a human being with malice aforethought, there's two kinds of murder. There's the kind you see on T.V. all the time where somebody watches somebody for three weeks and goes and buys the gun. All other murders, whether or not they're premeditated, are second degree murder.

"*But, they both have the element of malice aforethought. And now, what is that?*

"One instruction that you will receive says that malice is implied when there's an intentional act involving a high degree of probability that it will result in death, which act is done for a base antisocial purpose and with a wanton disregard for human life.

"Okay, the *defendant turning around 15 to 20 feet from that police officer and shooting at him is an act that constitutes malice aforethought.*

"Court will also instruct you as to direct and circumstantial evidence. Two kinds of evidence. In the instruction you will hear one is as good as the other. They're just different.

". . . . . . . . . . . . . . . . . . . . .

"Now, the way circumstantial evidence comes in to this case *has to do with the defendent's intent for that attempted murder, what was his intent.* Okay.

"The instruction says that a *specific intent with*which an act is done *may be shown by the circumstances*surrounding the commission of the act.

"So in other words, when the defendant turns around, fires that shot at Officer Crenshaw from 15 to 20 feet away, 21 feet, pointed right at him while he's trying to escape, *that act shows that he had the specific intent to shoot the officer.*

". . . . . . . . . . . . . . . . . . . . .

"One very important piece of information that I haven't covered yet is the fact that *the gun was jammed. What's the importance of that?* The importance of that is the defendant, *the only reason that he stopped shooting at that police officer and didn't kill him was because his gun jammed.* It was incapable of being fired.

"The officer testified that he pointed at him, took a shot and then he raised his hands, came back down again. It didn't work. That's when he dropped it.

"*So that all goes to how* [sic: show?] the — *he attempted to murder that officer* to the fact that he had the — *also the intent to murder him.*

"The only reason that he didn't fulfill his intention was because—not because he abandoned his intent or, you know, just felt badly about it, but because the gun didn't work." (Italics added throughout.)

2. *Closing Argument by Defense Counsel:*

Defense's counsel argued in relevant part as follows: "Officer Crenshaw, he's [sic] the only testimony on the attempted murder, goes, "He fired at *us.* 'That's what he said, if you believe his testimony. *So I don't believe you can find beyond a reasonable doubt that he intended to kill either of them.*

"He didn't say he pointed the gun at me, shot at me, intended to kill me. Said "He intended to kill *us* with *one bullet.*'

". . . . . . . . . . . . . . . . . . . . .

"I submit to you there was no attempt on anyone's life here at all. I don't believe that's reasonable.

"*In regards to the intent to kill aspect of attempted murder,* now, there's a Penal Code Section 245A, that's assault with a deadly weapon. Pull a gun on somebody. *You shoot at them, but you didn't intend to kill them. That's assault with a deadly weapon.*

"In order to prove attempted murder, not—I'm — you must prove that the person pulled a gun on a person and shot at them. *You have to prove malice. You have to prove intent to kill, not just that a person was shot at.*

"Now, the People have not charged assault with a deadly weapon, so you can't—you're not in a position to find Mr. Lee guilty of that. They've charged attempted murder.

"And I submit to you, even if you believe Officer Crenshaw's testimony that this weapon was leveled at him, that *there is no proof whatsoever that the intent was to kill.*

"I asked him, did the person say I'm going to kill you? No. See, this is not a situation where a person is on the ground and a person comes up to him, points a gun at them while they're in the ground. I mean the intent is obvious.

"Miss Somoza [the prosecutor] says there couldn't have been any other intent when somebody points a weapon at you and fires it. I don't believe that's true. Seems to me the person was obviously trying to escape. *If anything, there was an intent to escape, to get away, not to kill.* Doesn't have anything—feelings one way or the other towards any police officer.

"This isn't a case where somebody sat down and planned to kill somebody and then decided to do it. It's not that kind of a case at all, not at all.

"*In order to convict Mr. Lee of this charge, you have to prove that what he intended to do was murder.* That's *what his intent was, to kill.* And there's no evidence of that at all.

"And since the People chose not to file an assault with a deadly weapon, I submit to you, your only alternative is to find that as to that count, that there's just been a total failure of proof and return a verdict of not guilty, because as to that count, *the People have not proved intent to kill at all.* They've presented no evidence of it.

"Now, Miss Somoza says, well, you imply *malice. Sure you can imply malice if a person threw a bomb in the jury box.* You know obviously they knew somebody was going to get killed.

"*But this is not a case, this is not a case where the conduct of itself suggests the person's intent. The conduct in this case does not suggest that the only intent or that the intent here had to be an intent to kill.* The conduct does not suggest that." (Italics added throughout.)

3. *Instructions to Jury:*

"Now, *each of the crimes charged* in Count I, the attempted murder, and Count II, robbery, of the Information, there *must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator.* And unless *such specific intent exists, the crime to which it relates is not committed.*

"The specific intent required is included in the definitions of the crimes charged.

"*The crime of attempt[ed] murder requires the specific intent to unlawfully kill a human being.* And the crime of robbery requires the specific intent to permanently deprive such person of his property.

"The intent with which an act is done is shown as follows:

"By the circumstances attending the act. The manner in which it's done. The means used, and the soundness of the mind and discretion of the person committing the act.

". . . . . . . . . . . . . . . . . . . . .

"In the crime charged in *Count I, the attempted murder* in the Information, there must exist *a union or joint operation of act or conduct and a certain mental state in* the mind of the perpetrator. And *unless such mental state exists, the crime to which it relates is not committed.*

"*In the crime of attempt[ed] murder, the necessary mental state is malice aforethought.*

"An attempt to commit a crime *consists of two elements,* namely a *specific intent to commit the crime* and a direct but ineffectual act done toward its commission.

". . . . . . . . . . . . . . . . . . . . .

"But, acts of a person who intends to commit a crime will constitute an attempt where they themselves clearly indicate *a certain unambiguous intent to commit that specific crime* and in themselves are an immediate step in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstances not intended in the original design.

". . . . . . . . . . . . . . . . . . . . .

"Malice may be implied. Malice is implied when the attempt[ed] killing results from an intentional act involving a high degree of probability that it will result in a death, which act is done for a base antisocial purpose and with a wanton disregard for human life.

"When it is shown that an attempt[ed] killing resulted from the intentional doing of an act with implied malice, *no other mental state* may be—*need be shown* to establish the *mental state of malice aforethought.*

"The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person attempted to be killed. And aforethought does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act.

"Attempt[ed] murder is the unlawful attempt killing of a human being as the direct causal result, result of an intentional act involving a high degree of probability that it will result in death, which act is done for a base antisocial purpose and with wanton disregard for human life.

"When the attempt[ed] killing is the direct result of such intentional act, *it's not necessary to establish that the defendant intended that his act would result in the death of the human being.*" (Italics added throughout.)