[No. F044669. Fifth Dist. Jan. 26, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSHUA EARL BECK, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts D and E.

COUNSEL

Jerome P. Wallingford, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Louis M. Vasquez and Michelle L. West, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**VARTABEDIAN, J.**—Defendant and appellant Joshua Earl Beck was convicted of one count of attempted murder and three other felony counts. The jury was given conflicting instructions on the required state of mind for attempted murder. On appeal, we must determine whether the instructional error was harmless beyond a reasonable doubt. We conclude the error was not harmless; we reverse defendant's attempted murder conviction and affirm the remainder of the judgment.

## FACTS AND PROCEDURAL HISTORY

Defendant escaped from a Stanislaus County jail facility. On February 28, 2002, members of a multijurisdictional auto theft task force had under surveillance a house in which defendant was thought to be present. Defendant emerged from the house and drove away in a car. After a chase, defendant crashed his car into a fence and ran.

Modesto Police Officer Gary Guffey ran after defendant. As defendant ran, he pulled a semiautomatic handgun from his pocket. Guffey caught up with defendant and used his shoulder to drive defendant into a closed garage door. Guffey then grabbed defendant by the back of his shirt and spun defendant to the ground. While falling, defendant fired a shot. Two other pursuing officers, Modesto Police Officer Kelly Rea and Stanislaus County Sheriff's Detective David Brown, thought they might be hit by the shot, but the bullet struck the garage a few inches above the ground. (Rea testified he thought he was going to die; Brown testified he perceived he was about to be shot in the shin and that he jumped to avoid the bullet.)

Guffey landed on top of defendant and stayed on top of him, calling out for the others to shoot defendant because Guffey was losing his grip on defendant's gun. Guffey testified defendant held the gun under defendant's body despite Guffey's effort to pull the gun away. Rea testified defendant's right

hand was extended in front of defendant as he lay under Guffey and that defendant struggled to twist the gun back toward Guffey as if to shoot him in the head.

Rea approached defendant and placed his gun against defendant's temple. He pulled the trigger but the gun failed to fire. He then kicked defendant a couple of times. Eventually, Rea shot defendant in the lower spine and defendant collapsed; Guffey extracted defendant's gun and slid it across the driveway.

Defendant was charged by information with two counts of attempted murder (Pen. Code, §§ 187, 664 [count I, attempted murder of Rea; count II, attempted murder of Guffey]). (All further section references are to this code.) The information also charged three counts of assault on a peace officer with a semiautomatic firearm (§ 245, subd. (d)(2) [count III, assault on Brown; count IV, assault on Rea; count V, assault on Guffey]). Alleged enhancements as to each count were as follows: three prior serious or violent felony convictions (§ 667, subd. (d)), personal use of a firearm (§§ 12022.5, 12022.53), and three prior prison terms (§ 667.5, subd. (a)).

A jury found defendant guilty of counts I, III, IV, and V; it acquitted defendant on count II. It found true the personal use enhancement allegations. Defendant admitted the three strikes and prior prison term enhancement allegations. The court sentenced defendant to a term of 128 years to life. The court imposed a sentence of 27 years to life, plus 20 years on the section 12022.53, subdivision (c), enhancement on count I, and a consecutive sentence of 27 years to life on each of the other three counts. The court stayed the remaining firearm use enhancements and dismissed the prior prison term enhancements on motion of the prosecutor.

## DISCUSSION

A. *The Instructions for Attempted Murder*

When a defendant is charged with an attempted crime, the court normally instructs the jury with CALJIC No. 6.00 (setting forth the requirements for an attempt to commit a crime) and also with an instruction setting forth the elements of the crime alleged to have been attempted. CALJIC No. 6.00 provides, in relevant part: "An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." Thus, every attempt requires specific intent to commit the target crime, even if the completed crime does not require specific intent.

In the case of attempted murder, this combination of standard instructions has been recognized as problematical for 20 years. (See, e.g., *People v. Santascoy* (1984) 153 Cal.App.3d 909, 915 [200 Cal.Rptr. 709].) The problem arose because the standard murder instructions (CALJIC No. 8.10 and 8.11) provide, as relevant here, that the mental state required for commission of murder is *either* express malice—an intent to kill—or implied malice—the knowing and deliberate performance of an act the natural consequences of which are dangerous to human life. Implied malice does not require an intent to kill. Therefore, implied malice is not a sufficient mental state to permit conviction of attempted murder. Yet CALJIC No. 8.11 provides in part: "When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought."

The use of unmodified CALJIC Nos. 8.10 and 8.11 in attempted murder cases was recognized as error. (See, e.g., *People v. Lee* (1987) 43 Cal.3d 666, 670 [238 Cal.Rptr. 406, 738 P.2d 752]; *People v. Santascoy, supra,* 153 Cal.App.3d at p. 918.) Although the error was consistently found not prejudicial in the particular circumstances, the situation still called for remediation. In 1987, the publishers of CALJIC promulgated No. 8.66, which incorporated the gist of No. 6.00 into a modified version of No. 8.10. In essence, CALJIC No. 8.66 gives a modified definition of murder, limited to the "express malice" alternative set forth in CALJIC Nos. 8.10 and 8.11. (The use notes for CALJIC Nos. 8.11 and 8.66 do not expressly warn against the use of No. 8.11 in attempted murder cases. They probably should.)

CALJIC No. 8.66 provides, in relevant part: "Every person who attempts to murder another human being is guilty of a violation of Penal Code sections 664 and 187. [¶] Murder is the unlawful killing of a human being with malice aforethought. [¶] In order to prove attempted murder, each of the following elements must be proved; [¶] . . . ; and [¶] 2. The person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." Thus, the instruction attempts to remedy the previous problem by dropping any mention of implied malice and equating "malice aforethought" with "express malice aforethought" and "a specific intent to kill." (See com. to CALJIC No. 3.02 (4th ed. 1987 supp.) p. 118.)

### B. *The Proceedings in the Present Case*

For lay jurors, not steeped in the nuances of the term "malice aforethought," we think CALJIC No. 8.66 expresses with sufficient clarity the requirement that attempted murder requires the specific intent to kill. Here, however, the court instructed the jury first with CALJIC No. 8.66, then

immediately followed that instruction with CALJIC No. 8.11, reintroducing the concept of implied malice and informing the jury that either express or implied malice would "establish the mental state of malice aforethought."

The prosecutor began his argument to the jury by noting the different intents required for attempted murder and assault: "There's the first two charges, attempt murder. That's a specific intent crime. That's whether or not he had the intent to kill Officer Guffey and Officer Rea." Later, however, the prosecutor went astray. We quote at length:

"And did the person doing this have the specific intent to kill with express—or with malice; right? Well, yeah. How can shooting a gun at someone [Rea] not be intent to kill? Is there a good intention with trying to put a gun on someone's [Guffey's] head? Is there something else you can describe for those actions other than trying to kill Officer Guffey?

"Now, what's malice? There's two types of malice in the law, there's express malice—and you can have either, and you don't have to all agree. Some of you can think it's express malice, which is a manifestation of intent to kill, proof of intent to kill. The other type of malice is implied malice. You don't all—have to have 12 people agree that it's express or implied. You can have six of one, six of another; eight, four; whatever.

"And really, in this case, the evidence is pretty similar for the malice. Because for implied malice, it's an intentional act that we're talking about, and we had that here. The shooting the gun and the trying to put the gun on Guffey's head. What about the natural consequence of those acts? Well, I've already told you. Those cops would be dead, right, unless it was ineffectual.

"And it was a deliberate act done with the knowledge of the danger and a conscious disregard for human life. You cannot possibly fire a gun at someone and not realize, recognize the threat that poses to human life, so malice is present, both express and implied in this case."

Defense counsel argued that the shooting was unintentional and that defendant did not point the gun at Guffey's head.

The jury retired to deliberate with 19 separate verdict forms in hand. Within two hours the jury sent out a note stating: "We need the definition of what intent is." The court brought the jury back into the court room and asked: "Do you need something from the court other than the definition of general intent and specific intent, which are included in the instructions I've already given you?" Individual jurors answered that they had "looked at that" and they needed "clarification on it, if we can, please." "Layman's terms." "We're country folk."

The court dismissed the jury for the day. The next court day, the court conferred with counsel. There was no agreement about a response to the jury's inquiry. Defense counsel said he thought they were asking about intent generally as an element of crimes. The court thought the jury was confused about the difference between specific intent and general intent, since the charged crimes included both varieties.

When there was no resolution of the issue, the court called the jury into the courtroom and stated the following: "I understand your frustration in reviewing those instructions. I read them every week and I know sometimes you have to go through them a couple times to really understand what they say. Nonetheless, I must encourage you to do that, and use your common sense understanding of the word intent as it's used in the English language, as you believe it to be used, and apply that with the definitions we've given you for both specific intent and general intent, and I wish you good luck." Jurors responded: "We did already" and "We did." The court replied, "Okay, ladies and gentlemen," and the jury retired to continue deliberations. An hour later, the jury returned with its verdicts.

The jury found defendant guilty of attempted murder on count I, involving the shot fired as defendant fell to the ground. However, it found him not guilty on count II, about which Guffey's and Rea's testimony had been directly conflicting. The jury found defendant guilty on the three assault counts and found true the personal use of a firearm allegation as to count I and counts III through V.

## C. *The Impact of the Instructional Error*

█ Respondent acknowledges the court should not have instructed the jury with CALJIC No. 8.11, reintroducing the concept of implied malice. And the parties agree that we must evaluate the effect of the error in accordance with the standard set out in *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. Pursuant to that standard of review "we must ultimately look to the *evidence* considered by defendant's jury under the instructions given in assessing the prejudicial impact or harmless nature of the error." (*People v. Harris* (1994) 9 Cal.4th 407, 428 [37 Cal.Rptr.2d 200, 886 P.2d 1193].) "[W]e must inquire whether it can be determined, beyond a reasonable doubt, that the jury actually rested its verdict on *evidence* establishing the requisite [elements of the crime] independently of the force of the . . . misinstruction." (*Id.* at p. 429, italics in original.)

Although there are numerous opinions holding that the same error involved in the present case is harmless beyond a reasonable doubt (see, e.g., *People v. Lee, supra,* 43 Cal.3d at pp. 677–679; *People v. Santascoy, supra,* 153

Cal.App.3d at p. 918; cf. *People v. Murtishaw* (1981) 29 Cal.3d 733, 765 [175 Cal.Rptr. 738, 631 P.2d 446]), we are unable to reach that conclusion on the record before us. Three factors inform our decision.

First, the prosecutor explicitly argued that implied malice was sufficient to sustain a conviction. (Cf. *People v. Lee, supra,* 43 Cal.3d at p. 677.) By contrast, defense counsel did not argue to the jury that it must find defendant intended *to kill* Rea, because he argued defendant did not intend *to shoot* the gun at all. If the jury resolved the intent-to-shoot issue against defendant, which it apparently did, the remaining facts put the jury in the exact position argued by the prosecutor: "And it was a deliberate act done with the knowledge of the danger and a conscious disregard for human life. You cannot possibly fire a gun at someone and not realize, recognize the threat that poses to human life, so malice is present, both express and implied in this case."

Second, the jury expressed actual confusion about "intent." While the record does not conclusively show that the confusion arose as a result of the conflicting "malice" instruction, it certainly suggests as much. Jurors also stated they already had taken the steps the court suggested to resolve the confusion, but the confusion persisted. (Cf. *People v. Lee, supra,* 43 Cal.3d at p. 677.)

Finally, the jury acquitted defendant on count II, which was founded entirely on Rea's testimony. Thus, it seems likely the jury accepted Guffey's testimony and rejected Rea's. Yet even if the jury also rejected Rea's account in favor of Brown's as to count I, Brown's testimony that defendant fired the gun in the general direction of the officers would have been sufficient to convict on count I under the erroneous theory of implied malice. (Cf. *People v. Lee, supra,* 43 Cal.3d at pp. 678–679.)

█ ▪ Because the evidence clearly permitted the jury to convict on count I using the erroneous theory available under the instructions and argued by the prosecutor, we cannot say beyond a reasonable doubt that the instructional error did not contribute to the verdict on count I. (*People v. Harris, supra,* 9 Cal.4th at p. 429.)

D., E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* p. 518.

## DISPOSITION

The judgment of conviction on count I, attempted murder, is reversed. In all other respects, the judgment of conviction is affirmed. The judgment of sentence is reversed. If, within 30 days after remittitur issues from this court, the People have not filed and served an election to retry count I, the trial court shall resentence defendant in accordance with the views expressed in section D of the unpublished portion of the foregoing Discussion. If the People file an election to retry count I, the trial court shall resentence defendant on all counts after the retrial of count I.

Dibiaso, Acting P. J., and Dawson, J., concurred.

A petition for a rehearing was denied February 3, 2005, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 13, 2005.