Filed 2/1/22  P. v. Davis CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>COLLIN ROBERT DAVIS,<br><br>    Defendant and Appellant. | B312149<br><br>(Los Angeles County<br>Super. Ct. No. NA068464) |

APPEAL from an order of the Superior Court of Los Angeles County, James D. Otto, Judge.  Affirmed in part and reversed in part.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Defendant Collin Robert Davis, found guilty by a jury in 2008 of one count of second degree murder and three counts of premeditated attempted murder, challenges the trial court's denial of his petition to be resentenced pursuant to Penal Code section 1170.95.[1]

When the trial court denied Davis's petition for resentencing, section 1170.95 did not provide relief for individuals convicted of attempted murder. Although recent amendments to this statute now permit defendants who are convicted of attempted murder to petition for resentencing, the jury in this case found that Davis personally intended to kill his victim, rendering him ineligible to be resentenced under the revised statute as a matter of law.

We reach a different result with respect to Davis's second degree murder conviction. The trial court rejected his petition for resentencing on the second degree murder conviction at the prima facie stage even though the jury was instructed on the natural and probable consequences theory of murder, which is now precluded by section 1170.95. Further, during the proceedings below, the trial court indicated it was applying a lower—now impermissible—standard of proof in evaluating Davis's petition. The Attorney General concedes that the trial court erred in denying the second degree murder petition at the prima facie stage and that its error is not harmless.

We therefore affirm the denial of Davis's petition for resentencing with respect to his attempted murder convictions, and reverse and remand the petition for his second degree

---

[1] Subsequent undesignated statutory citations are to the Penal Code.

murder conviction, with instructions that the trial court apply the standard of proof now made applicable to section 1170.95 petitions by virtue of recent amendments to that section.

## FACTUAL AND PROCEDURAL SUMMARY

### A.    Factual Summary from Prior Opinion

In our prior opinion involving Davis's direct appeal (*People v. Davis* (Jul. 29, 2009, B207319) [nonpub. opn.] (*Davis I*)), we described the facts of the case, which we now summarize.[2]

On October 18, 2005, Steven Tan, Abel Osuna, Frank Salinas, and another man, were arguing at a restaurant in Long Beach. According to the statement he later made to the police, Tan had been approached by the group and they asked him for his gang affiliation. Tan fled and ran to a friend's house where he telephoned Davis to meet him at the restaurant. Once Tan returned to the restaurant, he found Davis, as well as Osuna, Salinas, and the unidentified man. The group drew firearms and Tan and Davis fled. After they arrived back at Tan's house, Davis told Tan to stay home. Tan later told the police he thought Davis intended to retaliate. (*Davis I, supra,* B207319.)

Tan also told the police that later that evening Davis called him and said, "Don't worry about those Mexicans and don't go to [the restaurant]." Davis added, "They won't mess with you." Davis also said he "and 'Little Man' and like two or three more other people" were with him. When the police asked Tan whether Davis said "how he took care of those Mexicans," Tan replied, "They shot at them." Tan further told the police that

---

[2] In evaluating a section 1170.95 petition, we may rely on the record of conviction including this court's prior opinions. (*People v. Lewis* (2021) 11 Cal.5th 952, 972.)

Davis talked about the shooting a few days later, stating Davis and a couple of his friends shot at them while Davis stayed in the car. Tan also told the police that Davis said, "almost everybody had a gun." (*Davis I*, *supra*, B207319.)

According to Salinas, after he and his friends left the restaurant, he was approached by two men while he was riding around on his bicycle, neither of whom he recognized, one of whom was wearing a bandana covering his face. One of the men asked whether Salinas had information on a local gang, and Salinas said he did not. About 15 minutes later, Salinas heard five or six gunshots. (*Davis I*, *supra*, B207319.)

According to victims Katherine Reyes and Jose Velasquez, they were walking near the restaurant that evening when they saw two or three men crossing the street, one of whom wore a white bandana covering his face. One member of the group shouted, "Shoot" and the group started shooting at them. Reyes heard about 15 gunshots, while Velasquez heard five or six. Reyes told the police she saw a gun in the hand of the man wearing the white bandana, and Velasquez testified he saw the same man shoot at them. Although they fled, Reyes was grazed by a bullet and Velasquez sustained multiple gunshot wounds to each leg. (*Davis I*, *supra*, B207319.)

Others were shot as well. At about 7:30 p.m. the same night, the police found Victor Gonzalez outside an apartment nearby. He had been shot once in the abdomen and later died as a result of blood loss. Another victim, Martin Morales, was shot in the abdomen the same night. Sometime after 7:30 p.m., the police found him bleeding on a bed in an apartment about two blocks from the location of Gonzalez's body. Morales survived. (*Davis I*, *supra*, B207319.)

4

When the police interviewed Davis on December 15, 2005, he initially denied being in the vicinity, but then admitted he in fact drove to that location at the request of "Little Man," and someone else he did not know who wore a "rag" over his face. Davis denied knowing what was planned. (*Davis I*, *supra*, B207319.)

## B.    Davis's Conviction and Prior Appeal

On March 24, 2008, the jury found Davis guilty of second degree murder of Gonzalez (§ 187, subd. (a)), and three counts of premeditated attempted murder of Reyes, Velasquez, and Morales (§§ 187, subd. (a), 664). The jury also found firearm and gang allegations to be true (§§ 186.22, subd. (b), 12022.53, subds. (d), (e)(1)).

On April 7, 2008, Davis was sentenced to state prison for 45 years to life.

On July 29, 2009, this court reversed one of the three attempted murder convictions (as to Morales) on Davis's direct appeal for insufficient evidence. We otherwise affirmed the judgment. (*Davis I*, *supra*, B207319.)

## C.    Petition for Resentencing and the Trial Court's Order

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.), which, among other revisions to the law of murder, abolished the natural and probable consequences doctrine in cases of murder. (See *People v. Gentile* (2020) 10 Cal.5th 830, 842-843.) The legislation also enacted section 1170.95, which established a procedure for vacating murder convictions for defendants who could no longer be convicted of murder because of the changes in the law and resentencing those who were so convicted. (Stats. 2018, ch. 1015, § 4.)

Recently enacted Senate Bill No. 775 (2021-2022 Reg. Sess.), effective January 1, 2022, amended section 1170.95 to, among other things, permit those convicted of attempted murder to petition for resentencing under that newly-amended section.

On January 4, 2019, Davis, represented by counsel, filed a petition for resentencing pursuant to section 1170.95. In his petition, he alleged that he had been convicted of second degree murder and two counts of attempted murder under the natural and probable consequences doctrine, that he could not now be convicted of murder or attempted murder, and requested the appointment of counsel.

On March 16, 2021, following briefing by both parties, the trial court held a hearing, heard arguments, and took the matter under submission. At a further hearing on March 30, 2021, the court denied the petition on several grounds: (1) Davis had failed to make a prima facie case as to his murder conviction because "he was tried on an express[ ] malice murder theory in addition to a natural and probable consequences theory"; (2) that even had a prima facie showing been made, "the People have proved to the court at the hearing beyond a reasonable doubt based on the record of conviction that he was/or would have been convicted on the theory of express[ ] malice"; and (3) Davis was not entitled to relief as to his attempted murder convictions because section 1170.95 does not apply to the crime of attempted murder.

Davis timely appealed.

## DISCUSSION

### A.    Davis Is Ineligible for Resentencing of His Attempted Murder Convictions

Davis argues the trial court erred in denying his petition at the prima facie stage because it erroneously held that Senate Bill

6

No. 1437 did not apply to the crime of attempted murder. This issue is now settled by the passage of Senate Bill No. 775, and thus, the trial court erred insofar as it did not predict the passage of this bill. What remains to be decided is whether this error was harmless under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818. (See *People v. Lewis*, *supra*, 11 Cal.5th at pp. 973-974.)

To be convicted of attempted murder, a jury must find a specific intent to commit the crime as well as a direct but ineffectual act done toward its commission. (§ 29.2, subd. (a); *People v. Campos* (2007) 156 Cal.App.4th 1228, 1242.) Express malice is required for attempted murder. (*People v. Beck* (2005) 126 Cal.App.4th 518, 522.)

Senate Bill No. 1437, which became effective January 1, 2019, amended section 189, which defines the degrees of murder, to limit murder liability based on felony murder or a natural and probable consequences theory for a person who: (1) was the actual killer; (2) though not the actual killer, acted "with the intent to kill" and "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer" in the commission of first degree murder; or (3) was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

Senate Bill No. 1437 also amended the definition of malice in section 188 to provide that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) As we have stated, the effect of this amendment was to abolish the natural and probable consequences doctrine in cases of murder. (*People v. Larios*

7

(2019) 42 Cal.App.5th 956, 964, review granted Feb. 26, 2020, S259983.)

In addition to amending sections 188 and 189, the Legislature enacted section 1170.95 (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019) which authorizes a person convicted of felony murder or murder under a natural and probable consequences theory to file a petition with the sentencing court requesting to vacate the conviction and be resentenced. (§ 1170.95, former subd. (a).)

During the pendency of this appeal, section 1170.95 was amended by Senate Bill No. 775. Among other changes, Senate Bill No. 775 amends section 1170.95 by "[c]larif[ying] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).)[3]

Contrary to the assertions made by Davis in his petition and on this appeal, the record of conviction establishes that he was convicted under an express malice theory on the attempted murder charges. On those charges, Davis's jury was instructed that it must find him guilty only if "[1] [Davis] took at least one direct but ineffective step toward killing (another person) [and] [2] [Davis] *intended to kill* that (person)." (Italics added.) Thus, when the jury convicted Davis, it found he acted with an intent to

---

[3] The amendment also codifies certain holdings of *People v. Lewis*, *supra*, 11 Cal.5th 952, reaffirms the burden of proof at a resentencing hearing, and addresses the evidence a court may consider at a resentencing hearing. (Stats. 2021, ch. 551, § 1, subds. (b)-(d).)

kill, and intent to kill is the equivalent of express malice. (*People v. Saille* (1991) 54 Cal.3d 1103, 1114-1115). Express malice remains a valid theory of murder following Senate Bill Nos. 775 and 1437. (§ 188, subd. (a)(1).)

Davis therefore cannot establish that he "could not presently be convicted of . . . attempted murder because of changes to Section 188 or 189 made effective January 1, 2019," as required by amended section 1170.95, subdivision (a)(3). (Stats. 2021, ch. 551, § 2.) The trial court's error—created by the passage of Senate Bill No. 755—was therefore harmless because, as a matter of law, Davis cannot establish that he is entitled to relief under section 1170.95, as amended by Senate Bill No. 775.

## C. The Trial Court Concededly Erred in Finding Davis Ineligible for Resentencing of His Murder Conviction

As we have discussed above, one effect of Senate Bill No. 1437 was to abolish the natural and probable consequences doctrine in cases of murder and to provide a resentencing procedure for those convicted under this theory. (*People v. Larios*, *supra*, 42 Cal.App.5th at p. 964, review granted.)

On Davis's murder charge, the jury was instructed on *both* aider and abettor *and* natural and probable consequences theories of murder liability. The jury was instructed it must find Davis guilty of murder so long as:

"1. The crime of assault with a firearm was committed;

"2. That the defendant aided and abetted [those] crimes;

"3. That a co-principal in that crime committed the crime of assault with a firearm; and

"4. The crime of murder was a natural and probable consequence of the commission of the crime of assault with a firearm." (CALJIC No. 3.02.)

9

The Attorney General concedes that, in light of the above jury instructions, Davis was convicted under a now invalid theory of murder liability. We agree that Davis successfully pled a prima facie case for resentencing under section 1170.95. The trial court thus erred in denying Davis's petition at the prima facie stage and by failing to issue an order to show cause. (See Stats. 2021, ch. 551, § 2; see also *People v. Lewis*, *supra*, 11 Cal.5th at pp. 971-972.)

The Attorney General also concedes, and we agree, that this error was not harmless on this record. In its order denying Davis's petition, the trial court held, "the People have proved to the court at the hearing beyond a reasonable doubt based on the record of conviction that he *was/or would have been* convicted on the theory of express[ ] malice." (Italics added.) Also, during the hearing on Davis's petition, the trial court characterized its task as determining "whether there was sufficient evidence in my mind that he *could be proven* guilty beyond a reasonable doubt by . . . actual malice based on the record of conviction."[4] (Italics added.)

Among the other changes we have discussed, Senate Bill No. 775 clarifies the standard of proof applicable to evaluating section 1170.95 petitions: "A finding that there is substantial evidence to support a conviction for murder, attempted murder,

---

[4] The trial court similarly stated "the People have just submitted to me on the record of conviction they have the burden of proof beyond a reasonable doubt, but I[,] under that section [1170.95,] am tasked with making a factual finding as to whether they did or *could* have proved that the defendant is guilty of murder under an implied malice theory or under an actual malice theory for that matter." (Italics added.)

10

or manslaughter *is insufficient* to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3), italics added; Stats. 2021, ch. 551, § 2.)[5]

Because the trial court repeatedly used the conditional "*could*" during its characterization of the People's burden, both in its order and during the hearing below, it is unclear whether the trial court applied the lower—now impermissible—standard of proof in evaluating Davis's petition.

It is reasonably probable that the trial court would not have denied Davis's petition at the prima facie stage had it applied the higher standard of proof now applicable to section 1170.95 petitions as amended by Senate Bill No. 775. (See *People v. Lewis*, *supra*, 11 Cal.5th at pp. 973-974 [denial of § 1170.95 petition evaluated under the standard of prejudice described in *People v. Watson*, *supra*, 46 Cal.2d 818].) Accordingly, the trial court's error in denying Davis's petition was not harmless.

---

[5] At the time the trial court denied Davis's petition, there was a division among appellate courts as to the standard trial courts should apply in deciding a petition at the last stage of review. Senate Bill No. 775 has resolved this issue by providing that the prosecution bears the burden "to prove, beyond a reasonable doubt, that the petitioner *is guilty* of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (d)(3), italics added; Stats. 2021, ch. 551, § 2.)

## DISPOSITION

That portion of the trial court's order denying the petition as to the attempted murder convictions is affirmed. That portion of the trial court's order denying the petition as to the murder conviction is reversed.

NOT TO BE PUBLISHED

CRANDALL, J.*

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.