[No. B040594. Second Dist., Div. Six. Apr. 4, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
GLORIA JIMENEZ LIZARRAGA, Defendant and Appellant.

**COUNSEL**

Maureen DeMaio, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Richard L. Walker and Noreen F. Berra, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GILBERT, J.**—Here we hold that jury instructions that may lead a jury to reasonably conclude that a defendant is an aider and abettor of a crime simply because the defendant had knowledge of the criminal purpose of the perpetrator are improper and require reversal.

Gloria Jimenez Lizarraga appeals her conviction following a jury trial on one count of possession of heroin for sale and one count of possession of cocaine for sale, violations of Health and Safety Code section 11351.

She contends that the court erred in failing to instruct the jury on the necessary intent required to be found guilty as an aider and abettor, and that the court erred in denying her motion to discover the identity of three informants mentioned in an affidavit in support of a search warrant.

We find no error in the denial of the discovery motion, but we reverse for instructional error.

## FACTS

Three informants told the Oxnard police that they had recently purchased heroin from a man named Javier at a house in Oxnard. Javier was described as Latin, at least six feet tall and weighing two hundred thirty pounds. One of the informants participated with the police in a controlled buy of heroin from Javier at the house.

With this information the police obtained a search warrant for the house. The affidavit in support of the warrant requested that the identities of the informants remain confidential for their safety and to ensure their usefulness as informants in the future.

When the police executed the warrant, Lizarraga and her two small children were in the southeast bedroom. They were the only people in the house.

A search of one of the dressers revealed Lizarraga's driver's license, a letter addressed to her, Social Security cards and a birth certificate in the top drawer. In the second drawer the police found women's lingerie, a plastic baggie with 56 balloons containing a total of 9.42 grams of heroin, a coin purse containing $193, and a woman's black stocking containing two plastic bags in which there were 2.21 grams of heroin. In the fourth drawer the police found a plastic baggie containing 87 bindles totalling 9.71 grams of cocaine and a large number of empty bindles. A search of the second dresser revealed male clothing and toiletry items.

In the rafters of the garage the police found a cardboard box containing 5.16 grams of heroin in 25 balloons. Next to the box they found an Ohaus triple beam scale with residue on it, plates, spoons, a coffee grinder and identification with the names Jesus Hernandez Ramirez and Migel Iper on it. On the other side of the box they found a bag containing papers with Lizarraga's name on them.

In a blue box on the floor of the garage the police found 31.13 grams of cocaine in 9 bags, 27.23 grams of heroin in 147 balloons, and 26.81 grams of cocaine in 260 bindles.

At Lizarraga's trial, police officers testified they believed the drugs were possessed with the intent to sell them. The officers formed this opinion because of the method of packaging the drugs and the presence of a scale, grinder, and other processing materials.

In her defense, Lizarraga introduced testimony that none of the police officers had seen her prior to the search or knew she lived at the house. She lived in the bedroom of the house with her boyfriend, Martin Gonzales.

Lizarraga's mother, who had lived in the garage for a time, testified she never saw any evidence of drug use or sales in the house or garage, although she had heard that Gonzales sold drugs. The other bedroom in the house was occupied by another couple and three children.

The property manager for the house, John Murphy, testified that he visited the home frequently to collect rent and evict people living in the garage. On several visits he met a heavyset Mexican man in his mid-20's. He never saw any evidence that Lizarraga was involved in drug trafficking. Lizarraga frequently had trouble paying the rent, and Murphy never saw indications of a change in her financial status such as new cars, new appliances or fancy furniture.

A social worker who visited the home to help Lizarraga with the care of her disabled daughter saw no evidence of any change in her financial condition or any other evidence that appellant was involved with the sale or use of drugs.

DISCUSSION

I

*Instructional error*

■ The court properly instructed the jury that a person who aids and abets in the commission of a crime is regarded as a principal and is as guilty as the perpetrator. (CALJIC No. 3.00.) It also properly instructed the jury that in order to aid and abet in the commission of a crime a person must act with both knowledge of the unlawful purpose of the perpetrator, and the intent to commit, encourage or facilitate the commission of the offense. (CALJIC No. 3.01; *People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318].)

■ Lizarraga's complaint is with two other instructions, requested by the People, that she argues could lead the jury to believe they need not find both knowledge and specific intent to find her guilty as an aider and abettor.

The first such instruction was: "Providing a location where another can commit an offense, if done with knowledge of the illegal purpose can constitute aiding and abetting in the commission of said offense."

Unlike CALJIC No. 3.01, and contrary to the holding in *People* v. *Beeman, supra,* 35 Cal.3d at page 560, this instruction does not expressly require that the defendant have both knowledge and specific intent.

The People argue that the instruction tells the jury only that providing a location with knowledge of an illegal purpose "can" constitute aiding and abetting, not that it does constitute aiding and abetting. In order to find out when it does constitute aiding and abetting, the People believe the jury in all likelihood referred to CALJIC No. 3.01.

The People invite us to reach this conclusion: Any jury that finds that a defendant has provided a location to a drug trafficker and finds that defendant knew that the trafficker would use the location in carrying out drug sales, must also find the defendant had the specific intent to facilitate the illegal activity.

Standing alone, this argument is persuasive, but we must also consider the cumulative effect of the second erroneous instruction. This was a modified version of CALJIC No. 2.02 concerning the sufficiency of circumstantial evidence to prove knowledge and specific intent. The offending portion of the instruction states, ". . . you may not find the defendant guilty of the offense charged in Counts I & II, unless the proved circumstances not only are consistent with the theory that he had the required specific intent or knowledge but cannot be reconciled with any other rational conclusion."[1]

The disjunctive, "or," relieves the jury from the requirement of finding both specific intent and knowledge. It invites the jury to conclude that knowledge of the perpetrator's unlawful purpose is alone sufficient.

---

[1] The full text of the instruction was as follows: "The specific intent or knowledge with which an act is done may be shown by the circumstances surrounding the commission of the act. But you may not find the defendant guilty of the offense charged in Counts I & II, unless the proved circumstances not only are consistent with the theory that he had the required specific intent or knowledge but cannot be reconciled with any other rational conclusion. [¶] Also, if the evidence as to any such specific intent or knowledge is susceptible of two reasonable interpretations, one of which points to the existence of the specific intent or knowledge and the other to the absence of the specific intent or knowledge, it is your duty to adopt that interpretation which points to the absence of the specific intent or knowledge. If, on the other hand, one interpretation of the evidence as to such specific intent or knowledge appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

Nor are we persuaded that the instructional error was harmless. ▪ Incorrect or inconsistent instructions on the element of specific intent require a reversal unless the error is deemed harmless beyond a reasonable doubt. (*People v. Lee* (1987) 43 Cal.3d 666, 676 [238 Cal.Rptr. 406, 738 P.2d 752].)

▪ The People compounded these errors by urging the jury to base its conviction on knowledge alone. In discussing what it takes to be an aider and abettor, the prosecutor told the jury, "I don't mean to mislead you." In fact, she did, because she argued that to be an aider and abettor requires "that the person knows of the illegal purpose of the person whom she's helping." The prosecutor went on to argue for a conviction because the drugs found in the defendant's dresser drawer "clearly show that she had knowledge of what was going on here." She did not argue that the jury must also find intent.

We do not question the intent of the prosecution, but caution that great care should be used in selecting instructions. Improper instructions can help ensure a trial court conviction, but an evanescent victory does not advance the cause of justice for either the People or the defendant.

No one saw Lizarraga sell illegal drugs; there was no evidence she even used them. Although drugs were found in the house and garage, she did not have exclusive occupancy of those areas. Other people lived in the house and had access to the garage. Lizarraga's boyfriend lived with her in the southeast bedroom and presumably had access to her dresser. Given the erroneous and inconsistent instructions, there is a reasonable possibility the jury found her guilty simply because they believed she had knowledge that others were keeping drugs on the premises and in her dresser. We must reverse.

## II

*Discovery of the confidential informants*

▪ We discuss Lizarraga's second contention, that the trial court erred when it denied her motion to discover the identities of the three confidential informants, as an aid to the trial court in the event of a retrial.

Where the defendant demonstrates a reasonable possibility that an anonymous informant could give evidence which might result in the defendant's exoneration, disclosure should be compelled or the case dismissed. (*Theodor v. Superior Court* (1972) 8 Cal.3d 77, 88 [104 Cal.Rptr. 226, 501 P.2d 234];

*People* v. *Garcia* (1967) 67 Cal.2d 830, 839-840 [64 Cal.Rptr. 110, 434 P.2d 366].)

Here, at best Lizarraga has demonstrated that the informants could testify it was a Latin male and not Lizarraga who sold them drugs. No one, however, contends differently. Disclosure of the informants, therefore, would add nothing, for they never claimed to have purchased drugs from Lizarraga or even to have known her. Therefore, we fail to see how their testimony could possibly result in her exoneration.

Contrary to appellant's suggestion, even if the informants identified appellant's boyfriend, Martin Gonzales, as the person who sold them the drugs, that would not show the drugs found in the dresser and garage belonged exclusively to Gonzales or that appellant did not aid and abet Gonzales in possessing drugs for sale. Although we must reverse on the ground of instructional error, we find no error in the trial court's denial of appellant's discovery motion.

The judgment is reversed.

Stone (S. J.), P. J., and Abbe, J., concurred.