Filed 7/16/13  P. v. Watson A1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>WALTER WATSON,<br><br>     Defendant and Appellant. | A135300<br><br>(San Francisco County<br>Super. Ct. No. 197031) |

Walter Watson appeals from the judgment of the trial court, following a jury trial, committing him to the custody of the Department of Mental Health (DMH), pursuant to provisions of the Sexually Violent Predator Act (SVPA), Welfare and Institutions Code sections 6600 et seq.[1]

Watson contends that the trial court committed prejudicial error by instructing the jury with a pinpoint instruction, at the People's request, concerning the definition of a "diagnosed medical condition."  We conclude that while it was error to instruct the jury with the challenged instruction, such error was harmless.

Watson also contends that the SVPA violates a number of his constitutional rights. We reject Watson's constitutional challenges to the SVPA because prior cases have already dealt with these challenges and rejected them.

We affirm the judgment of the trial court.

---

[1]  Unless otherwise indicated, all subsequent code references are to the Welfare and Institutions Code.

1

## BACKGROUND

In 2006, Watson was sentenced to five years in state prison following conviction of one count of an act of sexual intercourse with a person, not his spouse, against that person's will, by means of force, violence and fear of immediate unlawful bodily injury on that person (Pen. Code, § 261, subd. (a)(2)), and admission to two prior prison term enhancements (Pen. Code, § 667.5, subd. (b)).

Watson was released on parole in December 2009, but was returned to custody in October 2010, after violating parole by possession of a pocket knife, a can of malt liquor, and 0.1 gram of rock cocaine. Watson was remanded to state prison for 120 days for the violation.

The Department of Corrections and Rehabilitation requested screening reports for a possible DMH recommendation that SVPA proceedings be commenced. Drs. Jeremy Coles and Kathleen Longwell assessed Watson and concluded that he met the statutory definition of a sexually violent predator (SVP). On February 16, 2011, DMH recommended that SVPA proceedings be filed against Watson. On February 22, 2011, a petition was filed against Watson requesting a probable cause hearing. A hearing was held and, in October 2011, the court found probable cause to believe that Watson met commitment criteria.

A jury trial commenced on March 26, 2012, to determine whether Watson met the commitment criteria. Longwell testified for the People and stated her diagnosis that Watson suffered from three mental disorders: paraphilia not otherwise specified (paraphilia NOS), cocaine dependence in institutional remission or in a controlled environment, and antisocial personality disorder (APD). She stated her conclusion that these diagnoses predisposed Watson "to the commission of sexually violent offenses, by impairing his emotional volitional controls, rendering him a danger to the health and safety of others." Specifically, Longwell opined that Watson's sexual deviancy in combination with APD predisposed him to commit sex offenses.

Coles also testified for the People and diagnosed Watson as suffering from APD, with significant sexual deviation, cocaine dependence, and alcohol dependence. He

2

described APD as a disorder that is marked by "an inability to conform to social norms with respect to lawful behavior." When Coles was asked whether APD in "Watson's case make[s] him likely that he be undeterred from criminal punishment, and hence more likely to re-offend," he answered in the affirmative. Coles opined that because Watson's "particular [APD] has a very strong sexually aggressive component," his diagnosis carried "the qualifier with significant sexual deviation" and that Watson was "predisposed to commission of sex crimes in addition to other crimes."

Dr. Edward Hyman testified for the defense. Hyman diagnosed Watson with APD and cocaine dependence in remission, but did not believe that these disorders would contribute to a lessening of Watson's volitional control and would not contribute to the likelihood of recommitting a sexual offense.

Dr. Garrett Essres also testified for the defense. Essres had first evaluated Watson in December 2009. At that time, Essres's diagnosis was that Watson suffered from cocaine dependence, alcohol abuse, and APD. Essres did not find that any of these diagnoses would predispose Watson to sex offenses specifically.

Essres interviewed Watson again in January 2012. Essres did not believe that paraphilia NOS was an appropriate diagnosis for Watson. He believed that Watson's sex offenses reflected severe criminality, but not a sexual mental disorder.

On April 10, 2012, the jury found that Watson met the commitment criteria as an SVP. On April 11, 2012, the trial court committed Watson to the custody of the DMH.

Watson filed a timely notice of appeal on April 18, 2012.

**DISCUSSION**

**I.** *Instruction on a Diagnosed Mental Disorder*

The SVPA defines an SVP as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) " 'Diagnosed mental disorder' includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of

3

criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

The trial court instructed the jury with the standard SVP jury instruction, which closely follows the statutory language: "The petition alleges that [Watson] is a sexually violent predator. To prove this allegation, the People must prove beyond a reasonable doubt that: [¶] One, he has been convicted of committing sexually violent offenses against one or more victims; [¶] Two, he has a diagnosed mental disorder; [¶] And three, as a result of that diagnosed mental disorder, he is a danger to the health and safety of others because it is likely that he will engage in sexually violent predatory criminal behavior; [¶] And four, it is necessary to keep him in custody in a secure facility to ensure the health and safety of others. [¶] The term 'a diagnosed mental disorder' includes conditions either existing at birth or acquired after birth that affect a person's ability to control emotions and behavior and predisposes that person to commit criminal sexual acts to an extent that makes him or her a menace to the health and safety of others. [¶] A person is likely to engage in sexually violent predatory criminal behavior if there is a substantial danger, that is a serious and well-founded risk that the person will engage in such conduct if released into the community. The likelihood that a person will engage in such conduct does not have to be greater than 50 percent." (See CALCRIM No. 3454.)

Over Watson's objection, the trial court also gave a pinpoint instruction requested by the People: "Any current mental illness which makes [Watson] unlikely to be deterred by the threat of criminal punishment and hence likely to re-offend is a diagnosed mental disorder."[2]

Watson contends that the pinpoint instruction was erroneous because "it *changed the definition* of 'diagnosed mental disorder' to exclude any connection to sexually violent conduct. In doing so, the jury instruction lessened the burden on the prosecution

---

[2] The pinpoint instruction was modified by the court from that originally requested by the People: "An antisocial personality disorder, or any mental illness which makes the respondent unlikely to be deterred by the threat of criminal punishment, and hence likely to reoffend, is a 'mental disorder' within the meaning of these instructions."

. . . ." Watson claims that the alleged error violated his due process rights and his right to a jury trial under the United States Constitution and that the error was not harmless, beyond a reasonable doubt.

We conduct a de novo review of a claim that an instruction to the jury was in error: "Whether or not to give any particular instruction in any particular case entails the resolution of a mixed question of law and fact that, we believe, is however predominantly legal. As such, it should be examined without deference." (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

If we find that instructional error occurred, we may not reverse the judgment unless we also find that the defendant was prejudiced by the error. (See, e.g., *People v. Lee* (1987) 43 Cal.3d 666, 671.) If the error rises to constitutional dimension, amounting to a denial of the defendant's due process rights, we determine prejudice using the *Chapman* test: prejudice arises unless the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) Otherwise, we determine prejudice using the *Watson* test: prejudice arises if it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

In *Kansas v. Hendricks* (1997) 521 U.S. 346, 358 (*Hendricks*), the United States Supreme Court, affirming a Kansas law for the civil commitment of certain sexually dangerous individuals, wrote: "We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.' [Citations.] These added statutory requirements serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control. The Kansas Act is plainly of a kind with these other civil commitment statutes: It requires a finding of future dangerousness, and then links that finding to the existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person to control his dangerous behavior."

The California Supreme Court has held that "[a]ccording to *Hendricks*, civil commitment is permissible as long as the triggering condition consists of 'a volitional impairment rendering [the person] dangerous beyond their control.' " (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1156.) The *Hubbart* court also noted that "[w]ith the exception of nonsubstantive differences in grammar, the SVPA tracks the Kansas scheme verbatim in describing the requisite mental disorder as a 'congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others.' " (*Id.* at p. 1157.)

"[T]he *words* used by the Kansas and California laws themselves *inherently and adequately convey* the crucial class-restricting elements of future dangerousness linked to a disorder-related inability to control behavior. It necessarily follows that, if supported by substantial evidence, any finding of eligibility for commitment under these statutes, when made pursuant to *the statutory language itself*, also meets constitutional standards." (*People v. Williams* (2003) 31 Cal.4th 757, 769 (*Williams*).)

The People argue here that the pinpoint instruction at issue "simply clarified or provided an additional definition of element 2—the 'diagnosed mental disorder.' " However, despite the language of section 6600, subdivision (c), which might invite other examples of a "diagnosed mental disorder," the statutory language is regarded by the California Supreme Court as a definition, which conveys the concepts necessary for the SVPA to satisfy due process requirements: "California's statute inherently *embraces and conveys* the need for a dangerous mental condition characterized by impairment of behavioral control. As we have seen, the SVPA accomplishes this purpose by defining a sexually violent predator to include the requirement of a diagnosed mental disorder (§ 6600, subd. (a)(1)) affecting the emotional or volitional capacity (*id.*, subd. (c)), which predisposes one to commit criminal sexual acts so as to render the person a menace to the health and safety of others (*ibid.*), such that the person is 'likely [to] engage in sexually violent criminal behavior" (*id.*, subd. (a)(1))." (*Williams*, *supra*, 31 Cal.4th at p. 774.)

Because the statutory definition of "diagnosed mental disorder" plays such a central role in guaranteeing the constitutionality of the SVPA, and because the definition inherently and adequately conveys the required elements, any other definition, unsanctioned by the Legislature, would be error if not backed by solid judicial authority. We find no such authority for the People's pinpoint instruction.

The People argue that the language of the pinpoint instruction was "taken directly" from *People v. Burris* (2002) 102 Cal.App.4th 1096 (*Burris*). In *Burris*, the defendant argued that "reoffending impulsively or without considering the consequences is distinguishable from reoffending due to lack of control." (*Id.* at p. 1106.) The *Burris* court disagreed and held that "a recidivist violent sexual offender who, due to a mental disorder, is unlikely to be deterred by the risk of criminal punishment lacks control in the requisite sense." (*Id.* at pp. 1106-1107.) The court concluded that "there was sufficient evidence that defendant had a mental illness which made him unlikely to be deterred by the threat of criminal punishment, and hence likely to reoffend. This amounted to sufficient evidence of lack of control." (*Id.* at pp. 1110-1111.)

That the instruction at issue was "taken directly" from *Burris* "certainly does not, as the [People argue], justify its use as an instruction." (*People v. Hunter* (2011) 202 Cal.App.4th 261, 277.) The issue in *Burris* was whether there was sufficient evidence of lack of control, not the definition of "diagnosed mental disorder." *Burris* had nothing to do with jury instructions. We find in *Burris* no justification for an instruction that would subvert the California Supreme Court's observation that "California's SVPA states *no* category of committable disorder which *does not expressly require* a dangerous effect on emotional or volitional capacity." (*Williams*, *supra*, 31 Cal.4th at p. 774.)

We conclude that it was error for the trial court to instruct the jury with the prosecution's pinpoint instruction.

Watson argues that "the essence of [his] defense was that his [APD] was something that could not be treated under the SVPA as it was unrelated to sexually violent behavior." It seems that Watson's argument is that he lacks volitional control, but that lack of control does not have a sexual object or motivation. Thus, if the jury

7

believed Hyman and Essres, rather than the People's experts, they could not find that Watson had a "diagnosed mental disorder" under the definition contained in the SVPA because his APD did not predispose him to commit sexually violent offenses. However, under the People's pinpoint instruction, the connection of the disorder to sexually violent offenses was removed and was replaced with reoffense of an unspecified nature, so that the jury could find that Watson had a "diagnosed mental disorder" even if they believed Hyman and Essres.

The problem with Watson's argument is that it ignores the instruction that the jury was required to find that "as a result of that diagnosed mental disorder, he is a danger to the health and safety of others because it is likely that he will engage in sexually violent predatory criminal behavior." (See CALCRIM No. 3454.) Nothing in the People's pinpoint instruction would work to change that requirement. Because the jury found this element to be true, it must have found a causal connection between the diagnosed mental disorder and the likelihood that Watson would engage in sexually violent criminal behavior and thus pose a danger to others. Accordingly, we must conclude that Watson was not prejudiced, under any standard, by challenged instruction.

## II. *Equal Protection Challenge*

As originally enacted, the SVPA provided for the involuntary civil commitment of SVP's for two-year terms of confinement and treatment. (Stats. 1995, ch. 763, § 3, p. 5922; former § 6604.) A commitment could not be extended beyond a two-year term unless a new petition was filed requesting a successive two-year commitment. (Former §§ 6604, 6400.1.) In 2006, California voters amended the SVPA by approving Proposition 83, entitled "The Sexual Predator Punishment and Control Act: Jessica's Law." (*People v. McKee* (2010) 47 Cal.4th 1172, 1186 (*McKee I*); see Stats. 2006, vol. 1, p. A-299.) "[U]nder Proposition 83, an individual SVP's commitment term is indeterminate, rather than for a two-year term as in the previous version of the Act. An SVP can only be released conditionally or unconditionally if the DMH authorizes a petition for release and the state does not oppose it or fails to prove beyond a reasonable doubt that the individual still meets the definition of an SVP, or if the individual,

8

petitioning the court on his own, is able to bear the burden of proving by a preponderance of the evidence that he is no longer an SVP. In other words, the method of petitioning the court for release and proving fitness to be released, which under the former Act had been the way an SVP could cut short his two-year commitment, now becomes the only means of being released from an indefinite commitment when the DMH does not support release." (*McKee I*, *supra*, 47 Cal.4th at pp. 1187-1188; see § 6604.)

In *McKee I*, defendant McKee attacked the constitutionality of the amended SVPA on due process and equal protection grounds. (*McKee I*, *supra*, 47 Cal.4th at p. 1184.) The court rejected McKee's due process arguments (*id.* at p. 1194), but determined that SVP's are similarly situated to mentally disordered offenders (MDO's), who may be committed under the Mentally Disordered Offender Act (*McKee I*, at p. 1203; Pen. Code, § 2960 et seq.). Because the terms of commitment for SVP's are substantially less favorable than those for MDO's, the state must provide justification for the differential treatment. (*McKee I*, at p. 1203.) The court also found that SVP's are similarly situated to those committed after a finding of not guilty by reason of insanity (NGI's) and that, as with MDO's, "the People have not yet carried their burden of justifying the differences between the SVP and NGI commitment statutes." (*Id.* at p. 1207.) The case was remanded to the trial court to determine whether the People could demonstrate "the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment." (*Id.* at pp. 1208-1209.)

On remand, the trial court held an evidentiary hearing, following which it issued a statement of decision "finding the People had met their burden to establish, by a preponderance of the evidence, that the disparate treatment of SVP's under the Act was based on a reasonable perception of the greater and unique dangers they pose compared to MDO's and NGI's." (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1332, review den. Oct. 10, 2012, S204503 (*McKee II*).) On review, the appellate court affirmed the finding of the trial court: "We, like the trial court, conclude the disparate treatment of the SVP's under the Act is reasonable and factually based and was adequately justified by the People at the evidentiary hearing on remand. Accordingly, we conclude the Act does not

9

violate McKee's constitutional equal protection rights." (*Id.* at p. 1348.) The Supreme Court denied review and *McKee II* is now final.

Watson maintains that the SVPA violates the constitutional guarantee of equal protection and that *McKee II* was wrongly decided because the *McKee II* court "improperly applied the strict scrutiny standard applicable to equal protection claims in the civil commitment context and erroneously concluded the State met its burden of justifying the disparate treatment of SVP's and similarly situated persons committed under two of the State's other civil commitment statutes." He asks this court for the remedy the California Supreme Court granted in *McKee I*—remand to the trial court to conduct a hearing to determine whether the government can demonstrate the constitutional justification for differential treatment of SVP's as compared to MDO's and NGI's.

Watson bases his argument that the *McKee II* court failed to properly conduct a proper analysis using the standard of strict scrutiny on the basis of two isolated quotations from the court's opinion. We decline Watson's invitation to reopen the issue of whether the SVPA violates equal protection guarantees. The Fourth District Court of Appeal examined *McKee II* and concluded that it "applied both the correct standard of appellate review and the equal protection strict scrutiny standard." (*People v. McDonald* (2013) 214 Cal.App.4th 1367, 1371.) This district has followed the holding of *McKee II* and agreed with its equal protection analysis. (*People v. McKnight* (2012) 212 Cal.App.4th 860, 863.) Watson does not provide a compelling reason for us to reach a different conclusion.

Watson also maintains, to preserve the issue for federal review, that the indeterminate commitment and conditional release provisions of the SVPA violate his right to due process. We reject this contention because, as Watson acknowledges, *McKee I* determined that the SVPA does not violate due process rights and we are bound by that holding.

Also for the purpose of preserving the issues for federal review, Watson contends that commitment for an indeterminate term violates "the federal constitutional prohibition

10

against ex post facto laws [citation], the federal constitutional prohibition against double jeopardy [citation], and the federal constitutional proscription against cruel and unusual punishment [citation]." Because *McKee I* held that the SVPA is civil in nature and does not amount to punishment, we must reject these constitutional challenges to the SVPA. (*McKee I*, *supra*, 47 Cal.4th at pp. 1194-1195.)

## DISPOSITION

The judgment of the trial court is affirmed.


_____
Lambden, J.


We concur:


_____
Haerle, Acting P.J.


_____
Richman, J.

)