Filed 3/22/23  P. v. Alaniz CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN SEBASTIAN ALANIZ,<br><br>    Defendant and Appellant. | F082960<br><br>(Super. Ct. No. F20907965)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Alvin M. Harrell, III., Judge.

Richard M. Doctoroff, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Following a jury trial, defendant Juan Sebastian Alaniz was convicted of attempted premeditated murder and various associated offenses.  He contends (1) the

evidence was insufficient to sustain either the conviction for attempted murder or the jury's finding that the crime was willful, deliberate, and premeditated; (2) his aggregate sentence of 41 years to life is unconstitutionally excessive; and (3) even if we affirm, the case should be remanded for the trial court to pronounce a sentence on one count that was overlooked at sentencing and to resentence him under the new discretion afforded by recent amendments to Penal Code section 654.[1] We reject defendant's evidentiary arguments and remand for resentencing without reaching the constitutional challenge.

## PROCEDURAL SUMMARY

By information filed on December 28, 2020, the District Attorney of the County of Fresno charged defendant with attempted premeditated murder (§§ 187, subd. (a), 664, subd. (a); count 1); shooting at an occupied vehicle (§ 246; count 2); assault with a firearm (§ 245, subd. (a)(2); count 3); evading an officer with willful disregard (Veh. Code, § 2800.2, subd. (a); count 4); and misdemeanor resisting, obstructing, or delaying an officer (§ 148, subd. (a)(1); count 5). As to counts 1 through 3, the information alleged that the victim suffered great bodily injury (§ 12022.7, subd. (a)). As to counts 1 and 2, it alleged that defendant had intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)). For counts 1 and 3, it also alleged a firearm enhancement for personal use (§§ 12022.53, subd. (c), 12022.5, subd. (a), respectively). The information further alleged that defendant had suffered a prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and a serious felony (§ 667, subd. (a)(1)).

Following a trial,[2] on April 8, 2021, the jury convicted defendant on all charges, finding that the attempted murder was willful, deliberate, and premeditated, and also

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

[2]    At the close of evidence, the court denied defendant's brief oral section 1118.1 motion for acquittal on count 1, which asserted lack of evidence of intent to kill.

finding true the various firearm enhancements. In a bifurcated proceeding, the trial court found the prior conviction allegations true as well.

On June 18, 2021, the trial court sentenced defendant, and on June 21, 2021, defendant filed a notice of appeal. However, at defendant's request, the trial court on July 7, 2021 resentenced him to correct an error in how the firearm enhancements were imposed. As pronounced on July 7, 2021, defendant was sentenced as follows: on count 1, seven years to life, plus five years for the prior serious felony (§ 667, subd. (a)(1)), plus 25 years to life for discharging a firearm resulting in great bodily injury (§ 12022.53, subd. (d)); on count 2, 10 years, consecutive to the term on count 1, stayed pursuant to section 654; and on count 3, six years, consecutive to the term on count 1, stayed pursuant to section 654.[3] As discussed *post*, the trial court failed to orally pronounce a sentence on counts 4 and 5 at the July 7 resentencing. The court did state that the total prison term was 41 years to life, however. This appeal followed.[4]

## FACTUAL SUMMARY

Count 1 (attempted murder) and counts 2 and 3 (the firearm charges) arose from defendant's drive-by shooting of Thomas S. Counts 4 and 5 (the evasion and obstruction charges) arose from defendant's attempt to flee—first by car and then on foot—from officers who found him while investigating the shooting. Because defendant challenges

---

[3] The court also stayed the remaining personal firearm enhancements under sections 12022.5, subdivision (a), 12022.7, subdivision (a), and 12022.53, subdivisions (c) and (d).

[4] It appears that defendant failed to file a notice of appeal from the judgment entered on July 7, 2021. Nevertheless, the trial court and the parties have all proceeded as if the original June 21, 2021 notice of appeal effectively operated as an appeal from the ultimate judgment on July 7, 2021. We invited the parties to file supplemental briefs on the issue, but none were received. We exercise our discretion to treat as timely the June 21, 2021 notice of appeal. (See Cal. Rules of Court, rule 8.308(c) ["A notice of appeal filed before the judgment is rendered or the order is made is premature, but the reviewing court may treat the notice as filed immediately after the rendition of judgment or the making of the order."].)

only the sufficiency of the evidence with respect to the attempted murder conviction, we set forth only those facts relevant to count 1.

On the afternoon of August 13, 2020, Thomas was driving out of an apartment complex in his black sedan. As he turned out of the parking lot, he saw a car drive by in the other direction and then instantly make a very fast U-turn. Thomas kept driving, and the other car followed him down the two-lane road. After a "couple [of] minutes," two or three blocks later, the car pulled out into the opposing traffic lane as if to pass Thomas on his left. Instead of passing him, the car pulled up even with him, and as soon as Thomas looked over, he saw the driver (and sole occupant) pointing a gun at him through the open passenger window. Thomas immediately recognized the driver as defendant, based on previous encounters with him. With the gun extended in his right hand, defendant tilted or nodded his head back three times in a gesture of acknowledgement and then within a few seconds started shooting at Thomas.

Defendant fired three shots into the driver's-side front door. One of the bullets penetrated through to the interior and struck Thomas in the left side of his abdomen. The other two were stopped by the door paneling. None of the bullets hit the visible portion of Thomas's driver's window (which was rolled up), but the glass was shattered by their impact.

Once struck, Thomas slowed and stopped while defendant drove on. Thomas testified that he kept an eye on defendant's car, which started to slow down. According to Thomas, defendant turned around in a driveway, came back toward him, and shot at Thomas twice more as he drove by again—though none of the shots hit the car (or Thomas) on that second pass.

Soon after, Thomas received roadside medical assistance from Deputy Aaron Brochtrup, who happened to be in the area. At the scene, Brochtrup saw three bullet holes in the sedan's door, a large blood stain on Thomas's shirt, and a gunshot wound in his abdomen. Brochtrup testified that Thomas was "very upset" but was able to convey

what had happened. According to Brochtrup, Thomas said that he was shot by "Juan Alaniz" (defendant), who had pulled up next to him and fired three shots from a black semi-automatic handgun. Brochtrup testified that Thomas described only a single round of shots, after which defendant drove off without returning a second time.

Toward the end of Brochtrup's conversation with Thomas, before paramedics arrived, Thomas appeared to be starting to go into shock—getting pale, sweating, and not answering further questions. While Thomas was being loaded into the ambulance, Brochtrup and another responding officer, Sergeant Adam Maldonado, showed Thomas an unmarked photograph of defendant (a prior booking photograph, which Maldonado had pulled up on his phone). Thomas, who appeared to be lucid and comprehending, said, "That's the guy who shot me. That's Juan."

Thomas was taken to the hospital where he underwent emergency surgery and stayed for roughly a week. Detective Juan Galindo interviewed Thomas in his hospital bed the day after the shooting. Thomas appeared emotional and in pain but understood Galindo's questions and gave "a pretty much good statement," in Galindo's estimation. Galindo testified that Thomas said defendant fired two shots while driving past him, southbound; and that he said defendant then stopped, made a U-turn, and shot at him once more as he drove back again, northbound. Thomas also told him that, based on their prior encounters, defendant knew exactly what type of car Thomas drove.

The trial testimony showed that Thomas and defendant knew each other in the context of having both dated the same woman, Melanie, at various times.[5] Thomas

---

[5] The witnesses gave differing accounts of the exact state of each man's relationship with Melanie at the time of the shooting. Thomas testified that, at the time of the shooting, Melanie was his ex-girlfriend, whom he had not seen for two or three months. Maldonado testified emphatically that he understood Melanie to be, at the time of the shooting, Thomas's current girlfriend and defendant's ex-girlfriend. Meanwhile, Galindo testified that, from his conversation with Thomas, it appeared Thomas and defendant "were dating, at one point, the same [woman], Melanie." On appeal, defendant indicates

5.

testified that, previously, when Thomas would visit Melanie at her apartment—in the same complex where defendant lived—defendant would "make gun motions" at him and once tried to run inside Melanie's apartment with a bat "to get [him]." Two or three months before the shooting, defendant also "pulled a gun" (a shotgun or rifle) on Thomas. Galindo testified that Thomas "indicated the feud with him and [defendant] was over the fact that [defendant] had split with Melanie and was upset."

Thomas eventually recovered from the gunshot injury, with ongoing stomach issues and anxiety when driving.

## DISCUSSION

I.  SUFFICIENCY OF THE EVIDENCE

Defendant first contends that there was insufficient evidence to support his conviction for attempted premeditated murder. Defendant does not dispute that he was the shooter, but he asserts a lack of evidence both as to intent to kill and as to the finding that the attempted killing was premeditated and deliberate. We conclude that there was more than sufficient evidence to support both aspects of this conviction.

A.  *Standard of Review*

"In reviewing a challenge to the sufficiency of the evidence under the due process clause of the Fourteenth Amendment to the United States Constitution and/or the due process clause of article I, section 15 of the California Constitution, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Cole* (2004) 33 Cal.4th 1158, 1212.) "We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the

_____

that he was then the current boyfriend of Melanie, who was Thomas's ex-girlfriend, and that he (defendant) is now married to her.

6.

evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) " 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) It is well settled that " '[a] reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

*B.    Relevant Law*

The elements of attempted murder are (1) a "specific intent to kill," which is the equivalent of express malice, and (2) a "direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623; see *People v. Smith* (2005) 37 Cal.4th 733, 739 (*Smith*) [noting that intent to kill and express malice are, in essence " 'one and the same' "].) As defendant does not challenge the second element, we focus on the first.

Express malice, or intent to kill, is shown when the defendant " 'either desires the victim's death, or knows to a substantial certainty that the victim's death will occur.' " (*People v. Houston* (2012) 54 Cal.4th 1186, 1217.) "[E]vidence of motive is often probative of intent to kill," but it "is not required to establish intent to kill." (*Smith, supra,* 37 Cal.4th at p. 741.) "One may [act] with or without a motive and still be found to have acted with express malice." (*Id.* at pp. 741–742.) In many cases, intent to kill may simply be "inferred from the defendant's acts and the circumstances of the crime." (*Id.* at p. 741.) For example, "the act of purposefully firing a lethal weapon at another

7.

human being at close range, without legal excuse, generally gives rise to an inference that the shooter acted with express malice." (*Ibid.*)

Unlike murder, "attempted murder is not divided into degrees, but the sentence can be enhanced if the attempt to kill was committed with premeditation and deliberation." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654.) More than intent to kill is required to support a finding of deliberation and premeditation. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.) " 'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance." (*Ibid.*) " 'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of the time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." ' " (*Ibid.*) In short, a finding of deliberation and premeditation requires the existence of "preexisting thought and reflection," of any duration, "rather than unconsidered or rash impulse." (*People v. Lopez* (2018) 5 Cal.5th 339, 354–355; see *People v. Solomon* (2010) 49 Cal.4th 792, 813.)

In evaluating whether sufficient evidence supports a jury's finding that an attempted murder was deliberate and premeditated, we are guided by the three *Anderson* factors of planning activity, motive, and manner of killing. (*People v. Lopez, supra*, 5 Cal.5th at p. 355; see *People v. Anderson* (1968) 70 Cal.2d 15, 26–27.) These factors are nonexclusive, and "[t]hey are not all required" to uphold a finding of premeditation and deliberation. (*People v. Gonzalez, supra*, 54 Cal.4th at p. 663.)

C.   *Analysis*

      1.   *Intent to Kill*

Beginning with defendant's argument as to the essential elements of the crime, we have no trouble concluding that there was substantial evidence of defendant's intent to

kill Thomas. Defendant argues, as he did at trial, that his act of firing into the door panel of Thomas's car—instead of higher, through the window, at Thomas's head or chest—shows that he only intended to scare Thomas, not kill him. The jury was not persuaded by this argument, and we see no reason to disturb its judgment on this record.

Initially, the jury reasonably could have viewed Thomas's testimony that defendant circled back for a second round of shots as evidence of defendant's intent to kill, rather than scare. The jury could reasonably find that defendant returned to seal Thomas's fate after seeing that his aim was low the first time.

Defendant makes much of the fact that Thomas's initial description of the shooting to Brochtrup at the scene omitted any reference to this second pass. However, defendant's argument that Thomas's testimony therefore "must be discredited" mistakes our role for that of the jury. The *jury* reasonably could have credited Thomas's testimony despite the inconsistency by deciding (for instance) that Thomas's description of events to Brochtrup while bleeding and going into shock from a bullet wound might not have included the full details of the attack, as later conveyed to Galindo and in Thomas's testimony at trial. It is of no moment that a factfinder might also reasonably conclude, to the contrary, that Thomas fabricated the second round of shots to increase the odds of convicting his assailant who had also antagonized him previously. Our review for substantial evidence does not permit us to reweigh the evidence, as defendant requests. (See *People v. Zamudio*, *supra*, 43 Cal.4th at p. 357 [" 'We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' "].)

Even leaving aside the testimony about defendant circling back, however, the jury had before it uncontradicted evidence that defendant fired three shots at Thomas from only a car's width away while both were driving on a public road. Defendant cites no case in support of his theory that these cannot be interpreted as "kill shots" because the bullets happened to land below the window line, closer to Thomas's stomach than to his head and chest. Defendant acknowledges that he was but "a few feet away" from

Thomas, offering us no reason to part from the rule that "the act of purposefully firing a lethal weapon at another human being at close range, without legal excuse, generally gives rise to an inference that the shooter acted with express malice." (*Smith*, *supra*, 37 Cal.4th at p. 741.) "[T]he fact that the victim may have escaped death because of the shooter's poor marksmanship" does not necessarily preclude a finding of intent to kill. (*People v. Lashley* (1991) 1 Cal.App.4th 938, 945.) The jury reasonably could have concluded that the bullets landed lower than their desired target based on the testimony that defendant fired at Thomas with one hand while steering his car with the other, and while both cars were in motion. The testimony that defendant (a) aimed the gun at Thomas for several seconds before firing, (b) caused him serious injuries requiring emergency surgery, and (c) shot him at a close enough range to "inflict[] a mortal wound had the bullet been on target" adequately supported an inference of intent to kill. (*Ibid.*) Like the court in *Lashley*, which found sufficient evidence of intent to kill based on a single shot fired from a balcony 20 yards away, we note that a shooting need not occur at point-blank range to qualify as sufficiently close range to infer intent to kill. (*Id.* at pp. 943, fn. 2, 945; see *People v. Lee* (1987) 43 Cal.3d 666, 679 [firing at officers 15 to 20 feet away was evidence of intent to kill]; *People v. Villegas* (2001) 92 Cal.App.4th 1217, 1224–1225 [firing six shots at the occupants of a truck from about 25 feet was evidence of intent to kill].)

Finally, although not required for finding express malice, here there was evidence of defendant's motive to kill. Even without an exact understanding of defendant's and Thomas's history and their relationships with Melanie, the jury could reasonably infer that defendant viewed Thomas as a romantic rival whom he wished to keep away from Melanie. (See *Smith*, *supra*, 37 Cal.4th at p. 741 ["evidence of motive is often probative of intent to kill"].)

There was substantial evidence of defendant's intent to kill.

## 2. *Premeditation & Deliberation*

We likewise uphold the jury's premeditation and deliberation finding because there was overwhelming evidence that the attempted killing was the result of "preexisting thought and reflection rather than unconsidered or rash impulse." (See *People v. Lopez*, *supra*, 5 Cal.5th at pp. 354–355.) Again, the jury could reasonably have based this finding on the testimony that defendant circled back for a second round of shots; but even without that evidence, the circumstances surrounding the uncontroverted initial shooting demonstrated the requisite thought and reflection.

The testimony allowed the jury to reasonably conclude that, although defendant may not have set out that day to kill Thomas, he quickly formed that plan in the time between recognizing Thomas's car pulling out of the apartment complex and the shooting. After making the immediate U-turn to follow Thomas, defendant had several blocks and minutes in which to consider his next actions; and by the time he pulled up next to Thomas, defendant already had his gun aimed at his unsuspecting target. Defendant then actively acknowledged Thomas, nodding at him three times, and waited several seconds before firing multiple shots—which the jury could reasonably take as further evidence that defendant thought before he shot. In terms of the *Anderson* factors—planning activity, motive, and manner of killing, these circumstances showed a manner of attempted killing consistent with a "calculated design to ensure death rather than an unconsidered explosion of violence." (*People v. Horning* (2004) 34 Cal.4th 871, 902–903; see *People v. Thompson* (2010) 49 Cal.4th 79, 114–115 ["This manner of killing, a close-range shooting [just a few feet from the victim] without any provocation or evidence of a struggle, reasonably supports an inference of premeditation and deliberation."].)

There was also evidence of planning activity. First, defendant was driving with a loaded gun within reach. (See *People v. Villegas*, *supra*, 92 Cal.App.4th at pp. 1222, 1224 [defendant carrying a loaded gun at the time of the incident was evidence of prior

11.

planning activity, and defendant need not have planned to kill the victim before he happened to recognize him on that day].)  Second, as just discussed, the circumstantial evidence of defendant following Thomas for several blocks before the shooting was consistent with defendant quickly forming a plan of how to use his fortuitous sighting as an opportunity to kill Thomas.  (See *People v. Solomon*, *supra*, 49 Cal.4th at p. 813 ["preexisting reflection, of any duration" supports a finding of deliberation and premeditation].)

Finally, even if defendant's precise reason for wishing to kill Thomas was unclear, there was sufficient evidence of motive for purposes of the final *Anderson* factor. Despite hearing conflicting evidence of the state of each man's relationship with Melanie on the day of the shooting, the jury could reasonably infer that defendant viewed Thomas as an enemy because of his prior romantic association with defendant's current love interest.  Further, the jury could reasonably interpret defendant's recent prior acts of making "gun motions" at Thomas and brandishing a shotgun or rifle at him as threats on his life.

Viewing the above evidence in the light most favorable to the verdict, as we must, we conclude substantial evidence supports the attempted murder conviction both as to intent to kill and as to deliberation and premeditation.

## II.    EXCESSIVE PUNISHMENT

Appellant stated at oral argument that, in light of the need to remand this case for resentencing, we need not address his argument that sentencing him to an aggregate sentence of 41 years to life in prison was excessive punishment under the state and federal Constitutions.  We agree that it would best serve judicial economy to await any properly raised sentencing challenge defendant might bring after resentencing to decide the constitutionality of his ultimate sentence.

III.    REMAND FOR RESENTENCING

The parties agree that remand for resentencing is warranted both because the trial court failed to pronounce a sentence on count 4 and because recent amendments to section 654 afford the trial court new discretion to sentence defendant more leniently with respect to counts 1 through 3.  Remand is indeed warranted under these circumstances.

A.    *Missing Sentences for Counts 4 and 5*

As noted at the outset, defendant was initially sentenced on June 18, 2021, and then resentenced on July 7, 2021 (at defendant's request) to correct an error in how the firearm enhancements were imposed.  At the resentencing, the trial court neglected to pronounce any sentence for count 4 or count 5, the evasion and obstruction convictions.[6] The court did not mention count 4 at all, and for count 5, it only noted that defendant had credit for time served, without stating what sentence was being imposed.  The corresponding minute order and abstract of judgment reflect that four years in prison were imposed for count 4 and 180 days in jail were imposed for count 5.  However, " '[r]endition of judgment is an oral pronouncement.' " (*People v. Mesa* (1975) 14 Cal.3d 466, 471.)  Recording unpronounced terms of the judgment in the minutes or in the abstract of judgment is no substitute for actually imposing a sentence on all counts of conviction.  (See *People v. Zackery* (2007) 147 Cal.App.4th 380, 387–388 ["The clerk cannot supplement the judgment the court actually pronounced by adding a provision to the minute order and the abstract of judgment."].)

" 'After a conviction, following either a plea or verdict of guilty, the court must pronounce judgment upon the defendant (Pen. Code, §§ 1191, 1193, 1202, 1445), i.e., impose a fine or sentence of imprisonment.' " (*Hoffman v. Superior Court* (1981) 122 Cal.App.3d 715, 723.)  That judgment must include a sentence for all counts of

---

[6]    The parties draw our attention only to the missing sentence for count 4, but the resentencing transcript reveals that a sentence also was not pronounced for count 5.

13.

conviction. (*Id.* at pp. 724–725 [remanding for pronouncement of judgment on one count for which defendant was not sentenced, emphasizing trial court's "mandatory duty"].) Because the trial court here did not pronounce a sentence for counts 4 or 5, remand is required. Normally, we would simply remand for pronouncement of judgment on those counts. However, because of the recent amendments to section 654, we remand for a full resentencing as to all counts. At the resentencing hearing, the trial court shall pronounce a sentence for all counts.[7]

## B.     *Assembly Bill No. 518*

Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Assembly Bill 518) amended section 654—effective January 1, 2022, about six months after defendant's sentencing— to afford trial courts new discretion to decide which sentence to impose, and which to stay, when a defendant has been convicted of different criminal offenses for the same act or course of conduct. (§ 654, subd. (a); Stats. 2021, ch. 441, § 1; see *People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.) Previously, as it stood at defendant's sentencing, section 654 required the trial court to impose the sentence under the provision of law carrying "the longest potential term of imprisonment." (Former § 654, subd. (a).) As amended, section 654 now authorizes trial courts to punish associated crimes under any of the applicable sentencing provisions.

The parties agree, as do we, that Assembly Bill 518's amendment is an ameliorative change in law that applies retroactively to this case, which is not yet final. (See *People v. Mani* (2022) 74 Cal.App.5th 343, 379 ["Because Assembly Bill 518 was enacted while defendant's [case] was not yet final and it provides the trial court new discretion to impose a lower sentence, defendant is entitled to its ameliorative benefit."];

---

[7]     As the People point out, the abstract of judgment for the determinate sentences is incomplete, omitting the sentences imposed on counts 2 and 3. Upon resentencing, the trial court shall take care to prepare an abstract of judgment that accurately reflects all sentences imposed.

14.

*In re Estrada* (1965) 63 Cal.2d 740, 744–745 [absent evidence of contrary legislative intent, ameliorative criminal statutes apply to all cases not final when the statute takes effect]; see also *People v. Jennings* (2019) 42 Cal.App.5th 664, 682 ["For purposes of the *Estrada* rule, a judgment is not final so long as courts may provide a remedy on direct review."].)

Count 1 (premeditated attempted murder), count 2 (shooting at an occupied vehicle), and count 3 (assault with a firearm) arose from the same act of shooting at Thomas in his car. In sentencing defendant on counts 1 through 3, the trial court therefore was required to follow the former section 654 and impose and execute the life sentence prescribed for count 1 (§§ 187, subd. (a), 664, subd. (a)) while imposing and staying the determinate sentences prescribed for counts 2 and 3. With the benefit of Assembly Bill 518's amendment to section 654, however, the trial court would have had discretion to execute one of the lesser terms of incarceration applicable to counts 2 or 3 and to stay the life term on count 1. The present record does not "clearly indicate" that the trial court necessarily would have imposed the life sentence on count 1 as opposed to one of these lighter sentences had it possessed the discretion to choose. (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) We therefore agree with the parties that remand is appropriate so the trial court may resentence defendant anew with the benefit of the discretion now afforded by amended section 654.[8]

---

[8]    Given this conclusion, we do not reach defendant's additional, loosely briefed, argument that remand is also appropriate because Assembly Bill 518 and/or our Supreme Court's January 20, 2022 decision in *People v. Tirado* (2022) 12 Cal.5th 688 newly enable the trial court to impose and execute a lesser firearm enhancement than the 25-to-life term imposed under section 12022.53, subdivision (d). On remand, the court may revisit all of its prior sentencing decisions, including but not limited to which firearm enhancements to stay, in light of all new legislation and caselaw. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Jones* (2022) 79 Cal.App.5th 37, 46 [remanding for full resentencing despite "not reversing any of [the defendant]'s convictions or ruling that a portion of his sentence is invalid"].)

15.

## DISPOSITION

Defendant's sentence is vacated, and the matter is remanded for resentencing consistent with this decision.  The judgment of conviction is otherwise affirmed.

FRANSON, Acting P. J.


WE CONCUR:


PEÑA, J.


SMITH, J.

---

However, the court may not impose an aggregate sentence that exceeds defendant's original aggregate sentence of 41 years to life.  (See *People v. Brown* (1987) 193 Cal.App.3d 957, 961.)